(May 29, 1924.)

GEORGE S. SMITH, Appellant, v. CANYON COUNTY, CONSOLIDATED SCHOOL DISTRICT, NUMBER 34, CANYON COUNTY, and FERN R. HART, as Treasurer and *Ex-officio* Tax Collector of Canyon County, Respondents.

[226 Pac. 1070.]

SPECIAL SCHOOL TAX — ACTION TO SET ASIDE — ORDER OF BOARD OF COUNTY COMMISSIONERS—IRREGULARITIES—LACK OF JURISDICTION— METHOD OF ATTACK—DIRECT—COLLATERAL—NO PRESUMPTION OF VALIDITY—AFFIRMATIVE SHOWING OF JURISDICTION—OPENING OF SCHOOL YEAR—SPECIAL SCHOOL TAX—LEVY BY ANNUAL MEETING —BY TRUSTEES—TIME OF ANNUAL MEETING—MEETING AT TIME OTHER THAN PRESCRIBED BY STATUTE.

1. The remedy to correct errors and irregularities in the action of a board of commissioners in a matter over which such board has jurisdiction is solely by appeal, but if such board has acted without jurisdiction any order made by it is void, and may be attacked directly or collaterally.

2. The presumption of validity and regularity which attaches to the proceedings, orders or judgments of a court of general jurisdiction does not attach to the proceedings or orders of a statutory board like a board of county commissioners. In order to invest such board with jurisdiction it must affirmatively appear that the statutory jurisdictional requirements were complied with.

3. The phrase "opening of the school year," as used in C. S., sec. 826, means the second Monday in September, as designated in C. S., sec. 826.

4. The levy of a special school tax must be made under C. S., sec. 878, by the annual meeting, or under sec. 880, by the trustees.

5. Before the trustees of a school district can make a special tax levy under C. S., sec. 880, it must appear that the annual meeting has neglected or refused to make a levy, or at least that the electors have neglected or refused to hold an annual meeting.

6. Where the statutes authorize the electors of a district to hold an annual meeting at a certain time of the year for the levying of taxes, a meeting held and action taken at a different time are invalid.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. Ed. L. Bryan, Judge.

Action to set aside a school tax and recover the amount paid under protest. Judgment for defendants. *Reversed.*

Scatterday & Stone, J. A. Elston and S. Ben Dunlap, for Appellant.

When the board of county commissioners or any other tribunal makes an order which it has no jurisdiction to make, that order or act may be attacked directly or indirectly, collaterally or otherwise, at any time, in any kind of action whatsoever. (Spelling on Injunctions and Other Extraordinary Remedies, sec. 712; *Dunbar v. Board of County Commrs.,* 5 Ida. 407, 49 Pac. 409.)

The board of county commissioners is required, by law, to keep a record of its proceedings, and no presumption arises as to the regularity of any of its proceedings not appearing of record. (*Gorman v. Board of Commrs.,* 1 Ida. 533; *People v. Bercham,* 12 Cal. 50.)

"The jurisdiction of a board must appear from its records." (*Finch v. Tehama County,* 29 Cal. 454; *Swift v. Ormsby County,* 6 Nev. 95; *State v. Washoe County,* 5 Nev. 317.)

"The board of county commissioners is a tribunal created by statute with limited jurisdiction and only *quasi*-judicial powers and cannot act except in strict accordance with the mode provided by statute." (*Gorman v. Board, supra; Prothero v. Board,* 22 Ida. 598, 127 Pac. 175.)

"The power to establish new school districts, or to alter existing ones, may be designated by the legislature to subor-

dinate agencies or officers. When the power to exercise the authority is made to depend upon the performance of certain conditions, such as the signing of a petition by a certain number of voters or the like, the agent or officer cannot act until such conditions have been complied with." (35 Cyc. 834, 838.)

"To give to the superintendent of schools jurisdiction to detach a part of the territory of a school district and attach the same to an adjoining district, a petition in writing, duly signed, must be presented to him for the purpose." (*State ex rel. McLane v. Compton,* 28 Neb. 485, 44 N. W. 660)

Where the statute provides for the levying of a special tax by a school district, and prescribes the manner in which such levy shall be made, a literal compliance with requirements of the statute is necessary to the validity of the tax. (*Bramwell v. Guheen,* 3 Ida. 347, 29 Pac. 110; *Shoup v. Willis,* 2 Ida 120, 6 Pac. 124; *Maxwell v. Stanislaus Co.,* 53 Cal. 389.)

Taxes for the support and maintenance of common school district must be levied by the annual meeting of electors in the first instance, and if they fail and refuse to do so at said meeting the trustees may levy said tax. (C. S., secs. 875, 878 and 880; *State v. Lakeside Land Co.,* 71 Minn. 283, 73 N. W. 970; *Northern Pac. R. Co. v. Chapman,* 29 Ida. 294, 158 Pac. 560.)

Stone & Jackson and L. D. Hyslop, for Respondent.

"The remedy to correct errors and irregularities in the action of a board of commissioners acting in a matter over which such board has jurisdiction is solely by appeal." (*Canyon County v. Toole,* 9 Ida. 561, 75 Pac. 609; *Clay v. Board of Commrs.,* 30 Ida. 794, 168 Pac. 667; *Bobbitt v. Blake,* 25 Ida. 53, 136 Pac. 211; *School District No. 25 v. Rice,* 11 Ida. 99, 81 Pac. 155; *Picotte v. Watt,* 3 Ida. 447, 31 Pac. 805.)

McCARTHY, C. J.—Appellant, whose lands are embraced within the boundaries of Consolidated School District No. 34, Canyon county, seeks by this action to have the special

tax levied against his property by this district for the school year 1920 declared invalid, and to recover, with interest, the sum of $67.57, the amount paid by him under protest as the first instalment. He bases his attack on the legality of the tax on four propositions. He first attacks the legality of the organization of the consolidated district, alleging that the board of county commissioners acted without first acquiring jurisdiction. In support of this contention he alleges: That it does not appear from the records of the board of county commissioners (1) that petitions for the creation of the consolidated district had been filed, signed by a majority of the heads of families residing in each of the then existing common school districts affected; (2) that petitions setting forth in general terms the proposed changes in the boundaries of the districts affected had been filed; (3) that petitions for consolidation and creation of said district had been filed, accompanied by and referring to a map or maps, showing the old and new boundaries; (4) that the school superintendent had given notice as required by law of the filing of petitions for the creation of the respondent school district.

Appellant's second contention is that the tax is illegal because, at the time of the creation of the consolidated district, the school year for the season 1920 and 1921 had started, and the commissioners by the terms of their resolution made it effective immediately upon its passage, instead of at the opening of the next school year. Appellant's third contention is that the tax is illegal because not levied and assessed by an annual meeting of the voters of the district, nor by the board of trustees of the district. Appellant's fourth contention is that the tax is illegal because it was not certified to the county commissioners by the trustees of said district for levy and assessment against his property.

The case was tried to the court, oral testimony and documentary evidence being submitted. The court found as matters of fact, among other things:

''3. That it appeared from the records of the Board of County Commissioners of said Canyon County, at the time

39 Idaho.—15

said resolution was passed, that the Superintendent of Schools of said Canyon County, had given notice of the filing of said petitions for the consolidation of said Common School Districts Nos. 33, 34, and 73 into Consolidated School District No. 34, Canyon County, and stating the changes to be made in them, by sending notices by registered mail to each of the trustees of the School districts affected by the proposed consolidation; that the said County Superintendent of Schools caused printed notices stating the changes to be made in the boundaries of said Common School Districts Nos. 33, 34, and 73, and of the proposed consolidation of said Common School Districts into consolidated School District 34, to be posted for the period required by law in three public places in the Common School Districts so affected, before the passage of the said resolution by the board of commissioners of Canyon County, which created and established Consolidated School District No. 34.

"4. That all of the things which are by law required to be done in creating a Consolidated School District were duly and regularly done and performed by the Board of County Commissioners of Canyon County, Idaho, in creating and establishing Consolidated School District No. 34, and the said Board of County Commissioners of Canyon County, Idaho, had jurisdiction of the subject matter on September 10th, 1920, at which time said Board of Commissioners passed a resolution establishing and creating said Consolidated School District No. 34, Canyon County, Idaho.

"5. That at the time the said Board of County Commissioners passed the said resolution creating and establishing said Consolidated School District No. 34, the school for the year of 1920–1921 had not commenced.

"6. That the said special school tax of $1.25 on each one hundred dollars of the assessed value of the property within Consolidated School District 34, Canyon County, was levied by the Board of Trustees of said Consolidated School District 34, after the passage of the resolution by the Board of Commissioners of Canyon County, establishing and creating said School District; that said levy was not cer-

tified by the said Trustees until after the third Monday in September, 1921; that the said special school tax of $1.25 per one hundred, was levied against all the taxable property in said Consolidated School District 34. . . . .

"8. That plaintiff is the owner of the personal and real property described in the amended complaint herein, and that the said property is within the boundaries of Consolidated School District 34, Canyon County, Idaho; that the assessed valuation of said property for the year 1920 was $10,810; that the special school tax of $1.25 per one hundred dollars of the assessed valuation was levied and assessed against the said property of plaintiff by the Board of Commissioners of Canyon County, Idaho, for the year of 1920; that plaintiff paid the first instalment of said tax in the sum of $67.57, and that the second instalment is a lien on the real property described in the complaint.

"9. That at the time said Special school tax was levied and assessed against the property described in the complaint, Thomas Tarr, E. E. Heston and John Beal were duly appointed qualified and acting trustees of Consolidated School District No. 34, Canyon County, Idaho.

"10. That petitions signed by a majority of the heads of families residing in Common School Districts Nos. 33, 34, and 73, Canyon County, Idaho, were filed in the office of the County Superintendent of Schools of said County, praying for the establishment and organization of Consolidated School District No. 34, Canyon County, Idaho, and said petitions were affirmed by the County Superintendent of Schools more than twenty days before the Board of County Commissioners of said Canyon County passed the resolution establishing and creating Consolidated School District No. 34, Canyon County, Idaho."

The court found as conclusions of law:

"1. That on September 10th, 1920, the Board of County Commissioners of Canyon County, Idaho, had jurisdiction to pass the resolution creating and establishing Consolidated School District No. 34, Canyon County, Idaho, from

territory formerly included in Common School Districts Nos. 33, 34, and 73, Canyon County, Idaho.

"2. That a resolution was duly and regularly passed by the Board of County Commissioners of Canyon County, Idaho, on the 10th day of September, 1920, creating and establishing Consolidated School District No. 34, Canyon County, Idaho.

"3. That the failure of the trustees of Consolidated School District 34, Canyon County, Idaho, to certify the levy for a special tax, to be levied and assessed against the property in said School District for the year 1920, to the Board of County Commissioners within the time required by law was an irregularity and the action of said board of County Commissioners in levying and assessing such special school tax was subject to a direct attack by appeal; that no appeal having been taken from said action by said board of Commissioners, and the time in which such appeal could be taken having expired, such action cannot now be made the subject of collateral attack in this case.

"4. That the Board of County Commissioners having acquired complete jurisdiction concerning the organization of Consolidated School District 34, and the said board having by resolution, declared that all proceedings leading up to its order creating said District had been duly and regularly taken, the regularity and legality of its order can only be challenged in a direct attack through appeal."

From a judgment in favor of respondents this appeal is taken.

Appellant assigns as error the actions of the court in making the above findings. He also sets forth by appropriate specifications of insufficiency that the evidence does not support the findings, and that the findings do not support the judgment.

Respondent's argument supports the theory adopted by the court, viz., that the irregularities committed by the county commissioners are not subject to this sort of attack, but the only remedy was by appeal to the district court.

This court has held that the remedy to correct errors and irregularities in the action of a board of commissioners in a matter over which such board has jurisdiction is solely by appeal, but if such board has acted without jurisdiction any order made by it is void, and may be attacked directly or collaterally. (*Dunbar v. Board,* 5 Ida. 407.) If the board of commissioners in the present case acted without jurisdiction, the attack made by this action is proper.

This court has held: "A herd district cannot be legally created in this state without substantial compliance with all the statutory requirements governing such creation, and the fact of such compliance should affirmatively appear in the record of the proceedings of the board of commissioners." (*State v. Catlin,* 33 Ida. 437, 195 Pac. 628.)

It has also held: "A petition filed with the board of county commissioners, for the segregation of a school district from a rural high school, need not be drawn with the formal accuracy required of a pleading in a judicial proceeding.

"The failure of such petition to state jurisdictional facts is not fatal, if such facts appear in the record of the hearing." (*In re Segregation of School Dist. No. 58,* 34 Ida. 222, 200 Pac. 138.)

The presumption of validity and regularity which attaches to the proceedings, orders or judgments of a court of general jurisdiction does not attach to the proceedings or orders of a statutory board like a board of county commissioners. In order to invest such board with jurisdiction it must affirmatively appear that the statutory jurisdictional requirements were complied with.

The material provisions of the Compiled Statutes are as follows:

"Sec. 825. The board of county commissioners may, at any regular meeting of said board, create new districts, or change the boundaries of existing districts, or attach to one or more districts the territory of any district which shall have lapsed for any reason. All proceedings under this section shall be commenced by petition, which

must be filed in the office of the county superintendent at least 20 days preceding the meeting of the board of commissioners at which it is to be presented. All petitions either for the formation of a new district or any other change of boundaries, shall set forth in general terms the proposed changes and shall be accompanied by, and refer to, a map showing all existing boundaries of districts affected and all proposed new boundaries which will be established by the granting of such petition.''

''Sec. 827. Two or more districts lying contiguous may, upon petition of a majority of the heads of families residing in each of said districts be united to constitute one district. . . . . ''

''Sec. 829. It shall be the duty of the county superintendent, upon receipt of any petition as herein provided for, to give notice immediately to all parties interested, by sending notice by registered mail to each of the trustees of the district to be affected by such change or changes; and by causing printed notices to be posted in at least three public places in the district so affected, one of which shall be on the door of the schoolhouse in said district for at least one week. Such notice must state the change or changes to be made in said district, that the said petition is on file in the office of the county superintendent, and that the same will be presented to the board of county commissioners at its next regular meeting for final action. The superintendent must transmit the said petition to the said board with his approval or disapproval, and, if he approves the same, he may note such change in the boundaries as in his judgment shall be for the best interests of all parties concerned.''

''Sec. 826. . . . . No such change of boundaries or organization of a new district shall take effect until the opening of the next school year.''

''Sec. 823. The county superintendent shall appoint trustees for all newly organized school districts, who shall serve until the next regular election, and shall fill all vacancies that may occur in the board of trustees of a district by rea-

son of death, resignation or otherwise, and such appointment shall hold until the next regular election."

"Sec. 1043. The school year shall begin on the second Monday in September of each year: Provided, That this does not require school terms to begin on this date, but such terms may begin at such time as is fixed by the boards of trustees of school districts."

Sec. 878 provides that the electors of a school district in annual meeting shall determine whether a special tax shall be levied, and, if so, how much. Sec. 875 provides this annual meeting shall be held on the third Monday in April.

"Sec. 878. . . . . If a majority of the votes polled at such election are in favor of the tax and the amount of money to be raised, the board of trustees shall immediately certify the amount determined to be raised, the date thereof, the year for which the same shall be raised, and the number of the district, to the clerk of the board of county commissioners and the county assessor, but not more than one such special tax can be levied in any one year. The board of county commissioners shall, at the time of making their annual levies, make a sufficient levy in mills upon all the taxable property in said school district not exempt from taxation sufficient to produce the said amount of money so certified to be levied by special tax for such school district for such year, and shall certify the same to the county assessor."

Sec. 880 provides: " . . . . The board of trustees shall have power, when the annual meeting shall neglect or refuse to levy a special tax to maintain the schools, to levy a special tax upon all the property in the district, which when added to moneys apportioned by the county superintendent of schools, will be sufficient to provide funds for the maintenance of the school as provided in section 879. . . . "

Sec. 882 provides the board of county commissioners shall certify the levy to the assessor.

"Sec. 3223. The governing authorities of every city, town, village, school district, or any other district or munici-

pality to which is delegated by law the power to levy taxes, must, on or before the third Monday of September in each year, certify to the county auditor the tax rate levied by any such city, town, village, school district or other district or municipality for the said year upon any property situated therein, and the county auditor shall on or before said date file a certified list of such levies in the office of the assessor and in the office of the tax collector.''

In order to confer jurisdiction upon the board of commissioners it was necessary that a petition and map should be filed as provided by secs. 825 and 827, and that notice should be given as provided by sec. 829. It does not appear from the record of the proceedings before the board of commissioners, nor from the evidence introduced on the trial in the district court, that the petitions for the creation of the consolidated district were signed by a majority of the heads of families residing in each of the districts to be united. It does appear from the evidence introduced in the district court, although not from the record of the proceedings before the commissioners, that a proper map was filed. The petitions filed with the board set forth sufficiently the proposed changes in the boundaries of the districts affected. It does not appear from the record of the proceedings before the board, nor from the evidence in the district court, that proper notice of the petition was given as required by sec. 829. To be sure, the board of commissioners recited in its resolution that the petitions were signed as required by law and that all procedure required by law had been followed. This, however, is insufficient to establish jurisdiction, for, as above stated, the presumption of jurisdiction does not attach to the proceedings and actions of a board in a statutory proceeding.

Under the doctrine of *Re Segregation of School Dist. No. 58, supra,* the defects in the record, arising from the fact that there is no evidence to show that a proper petition was presented to the board of commissioners as required by sections 825 and 827, and that the proper notice was given

as provided by sec. 829, might possibly be remedied by additional proof to be supplied in the event of another trial.

Under C. S., sec. 1043, the school year begins on the second Monday in September, although school terms may begin before that date. The evidence shows that the term actually began on September 6th. However, we hold that the phrase "opening of the next school year," as used in sec. 826, refers to the second Monday in September as designated in sec. 1043. The consolidated district was created by order of the board of commissioners on September 10th. The second Monday of September was September 13th. The second contention of appellant is therefore without merit.

We will next consider appellant's third contention that the tax is illegal because not levied and assessed by an annual meeting of the voters of the district nor by the board of trustees. On September 21, 1920, there was filed with the board of commissioners a certificate signed by Thomas W. Tyer and E. E. Heston, purporting to be, respectively, the chairman and clerk of the board of trustees of the district, certifying that at an election held September 20th a majority of the votes of the qualified electors were cast in favor of levying a special tax on each dollar of taxable property of the district sufficient to produce a fund of $1,288.86 for general purposes for the year 1920, and ordering the board of county commissioners to make a special levy on the property within the district sufficient to produce that amount. There are also in the record the oaths of office as trustees of said school district of Mrs. Lloyd L. Trunnell, Thomas E. Tyer and Elmer E. Heston sworn to on September 20th. The complaint alleges and the answer admits that, after the commissioners made the order organizing the district, the county school superintendent appointed these persons trustees. On September 13, 1920, the board of county commissioners made the tax levies for Canyon county and the districts included within it showing a tax levied for Consolidated District No. 34 of $1.25 on each $100 of assessed valuation. Apparently, this was an

attempt on the part of that board to actually make the levy and not merely to certify it for the order contains the following statement:

"Levies for independent schools, highways, cities and special road districts submitted by each respective district and approved by the board of county commissioners. Commissioners make the levies for all schools not independent."

The board had no such power. The board of county commissioners cannot make the levy, its function being purely clerical or ministerial. (C. S., secs. 878, 880, 882; *Northern Pacific Ry. Co. v. Chapman,* 29 Ida. 294, 158 Pac. 560.)

The tax must be certified by the board of trustees to the board of county commissioners as having been levied by the electors at the annual meeting or by the board of trustees in the event of the failure or refusal of the annual meeting to take such action. The board of county commissioners then certifies the levy to the assessor. However, the fact that the board of county commissioners attempted to make the levy would not necessarily be fatal to the validity of the tax, if the levy were properly made by the annual meeting or by the trustees. The order of the board of county commissioners could be considered as a certification. Moreover, the fact that the board of county commissioners certified the levy to the assessor before it had actually been made by the annual meeting or the board of trustees would not necessarily be fatal if the meeting or the trustees subsequently took valid action levying a tax in the amount certified by the commissioners.

The remaining question and the vital one is, was a tax levied by School District No. 34 for 1920? C. S., sec. 878, provides that the electors in annual meeting shall determine whether a special tax shall be levied; and sec. 875 provides this annual meeting shall be held on the third Monday in April. Sec. 880 provides the board of trustees shall have power to levy a special tax when the annual meeting shall neglect or refuse to do so. This clearly contemplates that before the trustees have power to levy the tax, the annual meeting shall have been held and shall

have neglected or refused to act, or at least that the electors shall have neglected or refused to hold an annual meeting. The electors attempted to hold an annual meeting on September 20, 1920, for the purpose of levying the tax.

It is contended by respondent that the provisions of the statute in regard to the time of the annual meeting are merely directory and a meeting held at any other time is valid.

In *Shoup v. Willis*, 2 Ida. 120, 6 Pac. 124, this court said: "It is a well-settled principle of law that taxes cannot be levied or collected at any other time, or in any manner, nor for any other purpose, than that designed by law."

It also said in *Bramwell v. Guheen*, 3 Ida. 347, 29 Pac. 110: "Where the statute provides for the levying of a special tax by a school district, and prescribes the manner in which such levy must be made, a literal compliance with the requirements of the statute is necessary to the validity of the tax."

Again it said: "The power and authority to levy and collect taxes is wholly statutory, and where the purpose for which and the circumstances under which a special tax may be levied are expressly defined and limited by statute, the prerequisite circumstances must exist in order to give legal effect to a pretended tax levy for such purpose." (*Oregon Short Line R. R. Co. v. Minidoka County*, 31 Ida. 719, 175 Pac. 962.)

The authorities generally hold that where the statutes authorize the electors of a district to hold an annual meeting at a certain time of the year for the election of officers or levying of taxes, a meeting held and action taken at a different time are invalid. (*People v. Wabash Ry. Co.*, 296 Ill. 527, 129 N. E. 826; *Willard v. Pike*, 59 Vt. 202, 9 Atl. 907; *State v. Cones*, 15 Neb. 444, 19 N. W. 682; *State Board v. Belt etc. Co.*, 191 Ind. 282, 130 N. E. 641; *Stimson Timber Co. v. Mason County*, 97 Wash. 205, 166 Pac. 251.) The principle underlying these decisions is the elementary one that the powers of such subdivisions as school districts proceed entirely from statutes and cannot be exercised unless

the statutory requirements are substantially complied with. We are constrained to hold that the electors of the district had no power to hold an annual meeting and levy a tax in September, 1920.

The next question is whether the trustees made a levy, and, if so, whether they had the power. It would appear that their action did not amount to the making of a levy but merely to the certification of one attempted to be made by the electors. Conceding, for the sake of argument, that their action amounted to the making of a levy, did they have that power? It would seem not if the language used in C. S., sec. 880, is to be given its plain and ordinary meaning. The annual meeting had not neglected or refused to make a levy, nor had the electors neglected or refused to hold an annual meeting, and, therefore, the condition prescribed by the statute as a prerequisite to the exercise of the power by the trustees did not exist. Counsel for respondent says that such a construction of the statutes will prevent a newly organized district from making any levy the first year of its existence. In this counsel is correct. Under C. S., sec. 826, the organization of the new district does not take effect until the opening of the next school year, which is on the second Monday of September. It is clear that an annual meeting of the electors could not be held the April preceding because the organization of the new district would not be in effect at that time. Under C. S., sec. 875, the annual meeting must be held in April, and cannot be held in September after the organization becomes effective. Under sec. 880 the trustees cannot in such case make a levy because the annual meeting has not neglected or refused to do so, nor have the electors neglected or refused to hold an annual meeting.

The resulting situation is an unfortunate one. It is due, however, to the provisions of the statutes. This court would not be justified in refusing to give effect to the plain provisions of the statutes merely because the result is undesirable. The remedy is an amendment of the statutes giving the trustees power to make a levy the first year without the neces-

sity of first referring the matter to the annual meeting, and possibly an amendment of section 826, making the organization of the district take effect somewhat earlier, so as to permit time for the levy by the trustees before the county commissioners are required to certify the levy to the assessor, and yet not early enough to interfere with the preceding school year. Viewing the matter from any angle, we are constrained to hold that the special tax for the year 1920 was invalid. The conclusion we have reached as to this matter makes it unnecessary to consider further contentions of the appellant.

The learned trial judge concluded that the objections made to the organization of the district and the levy could be raised only by an appeal from the orders of the board of commissioners. In support of this contention reliance is placed on *School District No. 25 v. Rice,* 11 Ida. 99, 81 Pac. 155, which intimates, if it does not directly hold, that, even when an order of the board is void for want of jurisdiction, the only remedy is by appeal. This, however, is not in accordance with the later decisions of this court in *State v. Catlin* and *Chapman v. Northern Pacific Ry. Co., supra,* which affirm the generally recognized principle that jurisdictional questions, as distinguished from mere irregularities, need not necessarily be raised on appeal, but may be raised by any form of direct, or even collateral, attack.

So far as the validity of the organization of the school district is concerned, the defects in the record might be supplied upon another trial. We do not see, however, how any further evidence could be produced which would cure the fatal defects in the tax proceeding.

The judgment is therefore reversed and the case remanded to the district court, with directions to enter judgment for appellant in accordance with the views expressed in this opinion. Costs are awarded to appellant.

William A. Lee and Wm. E. Lee, JJ., concur.