No. 28,891.

A. W. CALLOWAY, *Appellant*, v. ATLANTA RURAL HIGH SCHOOL, DISTRICT No. 2, *Appellee.*

(284 Pac. 377.)

Opinion filed February 8, 1930.

*W. C. Harris, O. S. Samuel* and *W. L. Harris*, all of Emporia, for the appellant.

*S. C. Bloss, George T. McNeish* and *Stewart S. Bloss*, all of Winfield, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action on contract. The lower court sustained a demurrer to plaintiff's petition and plaintiff appeals.

The petition in substance stated that the plaintiff was by vocation a teacher, a graduate of the Kansas State Teachers College of Emporia, and that he held a life certificate from that institution; that on February 3, 1927, he was then engaged in teaching the rural high school conducted by the defendant, having been employed for that school year; that on February 3, 1927, the three members of the school district board met and entered into a contract with him in writing, whereby they employed plaintiff to act as principal of the rural high school conducted by the defendant, for a term of nine months commencing the first Monday of September, 1927, at a salary of $255 per month; that the said board was constituted according to the laws of the state of Kansas; that two of the members of said board would hold office under the term for which they were elected for a period of at least one year from and after April, 1927, and that the term of only one member of said board would expire in April, 1927; that on July 14, 1927, the plaintiff received notice by registered mail, purporting to be signed by the clerk and one of the directors of the said school board, notifying him that he was not

the principal of the Atlanta Rural High School for the coming year and in no way connected with said school; that thereafter he duly presented himself at the beginning of the school term and signified his readiness to comply with his contract, but the board refused to permit him to fulfill his contract; that he made diligent efforts to obtain other employment for the school year, but was unable to do so, and asked for judgment for the full contract price for the nine months. There was attached to the petition a copy of the written contract, which was as alleged in the petition; also copy of the notice of July 14, 1927.

The plaintiff contends that the school board is an entity recognized by law independent of the names of the various individuals who hold the offices of director, clerk or treasurer; that the school board as an entity is the only authority having power to employ a school principal or superintendent as well as teachers; that there is no statutory inhibition preventing the school district board from employing superintendents or principals at any time after February 1, and that the school board had the authority to enter into the contract which it did enter into as of February 3, 1927.

The defendant takes the position that the school board had no authority to enter into a contract with the plaintiff, which would bind the district, prior to the annual district meeting in April.

It is conceded that the rural high school maintained by the defendant does not come within the provisions of R. S. 72-1027. This section relates to the authority of district boards in districts maintaining schools which employ ten or more full-time teachers and provides that such boards shall not enter into a contract prior to February 1 for a term beginning the following August. R. S. 72-3507 relates to rural high-school boards and provides that such boards "except as herein provided, shall have the powers prescribed by law for school district boards." It is clear, therefore, that the district board in charge of the rural high school maintained by the defendant had only such rights, powers and authority as are conferred upon school district boards in charge of the common schools.

The question is: Can a school district board, created under the general laws governing school districts, legally contract with a teacher prior to the annual meeting, for a term to begin at a date subsequent to such annual meeting?

Boards of education and school district boards are the creatures of statutory law. The extent of their powers and authority must be determined from the statutes by which they are governed. School

district boards such as the one governing the defendant are elected under the laws of Kansas at an annual meeting. The time of this annual meeting is fixed by the provisions of R. S. 72-401 to be held on the second Friday in April of each year, at two o'clock p. m. It is of interest in this connection to note that the above section is a revision of section 6 of article 3 of chapter 122 of the Laws of 1876, which provided that such annual meetings should be held on the second Thursday in August of each year, at two o'clock p. m. It appears that the time of the annual meeting stood as established under the Laws of 1876 until 1911, when the legislature changed the date of the annual meeting to the second Friday in April. No doubt this change was influenced in part by the fact that experience had demonstrated that if the school board waited until after the annual meeting in August to hire its teachers the time would be too short in which to obtain competent teachers.

R. S. 72-407 provides that the qualified voters at each annual meeting, or any special meeting duly called, may determine the length of time a school may be taught in their district for the ensuing year. R. S. 72-406 fixes the powers of school-district meetings and provides, among other things:

"To vote a sum annually not exceeding the limit fixed by law as the meeting shall deem sufficient for the various school purposes and for the payment of any floating indebtedness of the district and distribute the amount as the meeting shall deem proper in the payment of teachers' wages."

Both of the foregoing sections appear originally in chapter 122 of the Laws of 1876. Section 12 of article 3 of that chapter originally provided that the qualified voters, in addition to determining the length of time school might be taught, should also determine whether the school should be taught by a male or female teacher, or both, and whether the term should be a summer term or a winter term. This was amended by chapter 436 of the Laws of 1903, by dropping out the right to determine whether the school should be taught by a male or female teacher. Notwithstanding the legislature has seen fit to change the original sections on several occasions, it has still left with the annual meeting the power to determine the length of term of the school year and the further power to determine the amount of money to be raised and how much shall be paid to teachers.

Under the provisions of R. S. 72-701, in the event of a change in the school population of the district, such as to render it inadvisable

to maintain a term of school, the annual meeting may make provision for sending the children of such district to another district or districts.

Counsel for plaintiff cites some cases from other states in support of his contentions. In some of these cases it is to be noted that the annual meeting is not held until July, and in the case of *Cleveland v. Amy,* 88 Mich. 374, 50 N. W. 293, cited by plaintiff, the annual meeting under the statute involved was not held until September. The court in discussing the question said:

"The difficulty in securing competent teachers if school boards were obliged to wait until the annual meeting in September is apparent. It is exemplified in this case where the relator had taught in this school for two years and could not wait for the annual meeting as he had other opportunities offered him."

Except as they apply to the construction of the statutes of their respective states, these decisions do not afford safe guidance.

In *Jones v. School District,* 7 Kan. App. 372, it was held:

"The powers conferred by law upon the electors at an annual school district meeting are inconsistent with the existence of authority in the school board of a district to enter into a binding contract prior to the meeting for the employment of a teacher for a term commencing after such meeting." (Syl.)

In the opinion the court said:

"Under our laws the electors at an annual school meeting possess powers the existence of which is inconsistent with the doctrine which counsel advance and which some of the courts have adopted." (p. 374.)

It appears that the annual meeting of the school district is intended by the legislature to be a pure democracy. Each qualified voter residing within the district is given the right to appear at the annual meeting and there exercise his voice in all matters pertaining to the conduct of the affairs of the school district as outlined by the statutes. Each voter has the right to say, at the annual meeting in April, how long a term shall be conducted during the ensuing school year. Each voter has the right likewise to voice his judgment as to the amount of compensation to be paid to each teacher hired by the district. He has the further right to vote on the question of whether any school shall be conducted by the district during the ensuing year. The powers of the school-district board are clearly limited by the express powers granted to the voters of the district to be exercised at their annual meeting.

The legislature of this state has, as above indicated, amended the laws relating to school districts on numerous occasions and yet it

has never seen fit to confer expressly upon the district board the power to hire teachers, prior to the annual meeting, for the term following such annual meeting. If the legislature of this state deemed it wise public policy so to do it would be a simple matter for it to so amend the statutes.

It is not within the province of this court to extend the statutes beyond their plain intendment. Until the annual meeting has fixed the length of term and the amount of wages to be paid, it is manifest that the board is in no position to make a contract.

The judgment is affirmed.

BURCH, J., dissenting.