No. 29,964.

THE FARMERS STATE BANK OF BONNER SPRINGS, *Appellee,* v. SCHOOL DISTRICT No. 100 IN JOHNSON COUNTY, *Appellant.*

(4 P. 2d 404.)

Opinion filed November 7, 1931.

*Howard E. Payne* and *S. T. Seaton,* both of Olathe, for the appellant.
*David F. Carson,* of Kansas City, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This is an action to recover on four school-district warrants issued by the defendant in the aggregate amount of $4,000. The plaintiff prevailed, and the defendant appeals.

The petition contains the usual and ordinary allegations in such actions, stating a cause of action against the defendant. The answer, among other things, alleges that the defendant was the owner of a

schoolhouse site and that during the year 1927 the qualified electors of the district, at an election duly called and held for that purpose, voted to build a new schoolhouse on the site then owned by the district, and authorized the issuance and sale of bonds in the amount of $22,000. The assessed valuation of the district was $447,527. Bonds were duly and regularly issued and sold. A contract for the construction of the building, according to. the plans and specifications, was entered into with S. W. Hite, which contract was upon the basis of cost plus ten per cent, and that it was well known to the members of the board and the contractor that the total cost of the building would largely exceed the sum of $22,000; that said sum was expended and the building was incomplete; that in the completion of the building a sum in excess of the amount authorized by the electors, aggregating $11,123.20, was expended; that the warrants sued on were a part of the excess expenditure and were issued to S. W. Hite and by him assigned to the plaintiff, and it is admitted that the plaintiff is the owner and holder of the warrants.

It is further alleged that the warrants sued on were issued without any itemized account or claim duly verified being filed with the school district.

The reply contained a general denial and alleged that the warrants sued on were lawfully issued by the defendant, and that the defendant is estopped to deny the illegality, if any there be, in the issuance of the warrants for the reason that the defendant received the money on the warrants, and the services and material for which the warrants were issued were appropriated and used by the defendant, and the defendant, by its acts and conduct, has ratified the issuance of the warrants and appropriated to its own use the money, property and services for which they were issued.

The case was tried to the court, without the aid of a jury, and the court made special findings of fact and conclusions of law, which are as follows:

"FINDINGS OF FACTS.

"1. Plaintiff is the owner and holder of the warrants sued on.

"2. Defendant is a duly organized rural school district in Johnson county, Kansas, with its school located in the unincorporated village of Holliday, with an assessed valuation of taxable property for the year previous to the voting of the bonds for the erection of a school building of $448,639.

"3. On March 16, 1927, bonds for the erection and equipping of a school building were voted in the sum of $22,000, and the school board of said district issued and sold bonds in the total sum of $21,000 and realized therefrom the

total sum of $21,147.58. The balance of $1,000 was never issued by the said district board.

"4. The funds provided for the erection and equipping of said school building were exhausted before said building was fully completed and equipped, which fact was known at the time by the members of the school-district board, and also generally known by the patrons and taxpayers of said school district.

"5. A portion of said total of $11,123.20, representing the excess of expenditure over and above the amount realized from the sale of said bonds, represents an expenditure for equipment of said schoolhouse which was purchased by said district board long after it had personal knowledge that the amount of the bonds sold by said board would be insufficient to fully pay for. A portion of said excess was expended by said district board for the grading of the school yard and the erection of a stone retaining wall about said school yard, and for certain improvements at a colored school in said district.

"6. Said school district received full value for the labor and materials that went into the erection and equipment of said school building.

"7. Upon completion of said school building it was immediately occupied by said district and since said time has continued to be occupied and used by the grade schools of said district, for school purposes.

"8. No protest was made and no action was taken to prevent the expenditure of the above-mentioned excess, during the time that the fact became known to said district board and to the patrons and taxpayers of said school district that the amount of the bonds voted by said district would be inadequate to complete the erection and equipment of the said school building, and no protest was made and no action taken to prevent the continuation of the completion of the erection and equipping of said school building after the fact became known to said district board and to the patrons and taxpayers of said school district that the amount of the bonds voted would be inadequate to complete the erection and equipment of said school building.

"9. Said school district has received the full benefits derived by the purchase by the plaintiff of the warrants sued on herein.

"10. It was necessary that said school building be completed and equipped after the sum of $21,147.58 had been by the district board expended thereon and said building was in an incomplete and unusable condition for school purposes. The general plan of the new school building was followed by the school board as the same was discussed and approved by the patrons of said district. Said school district could not have refused to occupy said school building and use the same, without great loss.

"CONCLUSIONS OF LAW.

"1. The expenditure of funds in excess of the amount received from the issue of bonds for the erection and equipment of a schoolhouse, for the purpose of completing and of equipping the same, was necessary for the protection of interests of said school district.

"2. The purchase of said warrants by the plaintiff was ratified by said school-district board. And said school board and the patrons and taxpayers of said school district, who, with knowledge of the fact that the funds derived

from the sale of the bonds were insufficient to complete the building and equipment of said school building, and who stood by without protest against the expenditure of the excess of said bonds which was necessarily expended to complete the building and equipping of said schoolhouse, and who have, ever since the completion of said school building, been receiving the benefits of all the funds expended in said school building by using it for school purposes, are now estopped from maintaining that said warrants were illegally purchased by the plaintiff herein and that the amount sued on herein is not a just and valid obligation against said school district.

"3. Plaintiff is entitled to judgment against defendant for the amount sued on herein, and for its costs."

It is contended by the appellant that the evidence does not support the findings of the court that the district board, the patrons and taxpayers had any knowledge that the fund was exhausted before the building was fully completed and equipped. We have examined the testimony and we are of the opinion that the court's findings of fact are supported by substantial testimony. It appears that at the time the meeting was called for the purpose of discussing the building of a new schoolhouse a planning committee was appointed to coöperate with the board in looking after the business of erecting the building. The evidence clearly indicates that this planning committee assisted in preparing the plans and specifications for the construction of the building and they must, under the circumstances, have known the approximate cost of the structure and that it was necessary to spend $3,800 to prepare the site for the erection of the building. Bids were advertised for the construction of the building and received on May 2, 1927. Three bids were received, the lowest of which· was $21,557 and the highest $29,430. The bids were all rejected and the contract was awarded to S. W. Hite on the basis of cost, plus ten per cent. There were only seventy-five legal voters in the district, and taking into consideration all of the facts and circumstances surrounding the construction of the building we think the court was fully warranted in finding that the taxpayers of the district knew the building was costing more than the sum appropriated.

It is earnestly contended by the appellant that the warrants were illegally issued and that their issuance had not been ratified by the district. As the court views this case it hardly seems necessary to go into the technical question of the issuance of the warrants in the first instance. We are inclined to rest the decision of this case on the conduct of the appellant, through which it received and retained

the full consideration for the warrants in labor and material, and it cannot, under such circumstances, escape liability. (*Columbian Title and Trust Co. v. City of Tribune,* 133 Kan. 51, 298 Pac. 798.)

The democratic character of the school district was emphasized by this court in *Calloway v. Atlanta Rural High School,* 129 Kan. 659, 662, 284 Pac. 377. The qualified voters residing within the district are given the right to appear at the annual meeting and there exercise their voice in all matters relating to the conduct of the affairs of the school district. They may designate a site for a schoolhouse, appropriate money not to exceed the limit fixed by law, and distribute the amount appropriated in payment of teachers' wages; the purchase or lease of a site; the building, hiring or purchasing of schoolhouses and keeping in repair and furnishing the same. They may authorize the sale of any schoolhouse site or other property belonging to the district. They may give directions and make provision for the prosecution or defense of any suit in which the district is a party. They may determine the length of time school shall be taught, and they may adjourn the meeting from time to time. (R. S. 72-406, 72-407.) With all these powers there must be and there is a commensurate responsibility. The residents of the district cannot stand idly by and watch the improvement of a schoolhouse site and the construction of a building knowing that the building is costing more than the sum appropriated therefor and with this knowledge accept the building, enjoy its use and accommodation without objection or protest, and then repudiate the obligation to pay for such improvement.

In this case, on the 24th of January, 1927, at a called meeting of the district, it was determined to take steps toward the building of a new schoolhouse and the meeting appointed a committee composed of five citizens to draw plans and specifications. The committee made its report on the 4th of March, 1927, and a motion was there made and carried that the committee appointed be made permanent to coöperate with the board in directing and supervising the construction of the building. There is no contention that this committee did not function, and the court finds that the taxpayers knew the bond issue was inadequate to complete the erection and equipment of the building. Notwithstanding these facts, no protest was made and no action taken to prevent the completion of the building, and after its completion it was occupied, used and appropriated by

the school district. There is no claim of fraud or bad faith, or that the district did not receive full and adequate consideration for the warrants in question. The building appears to have been entirely satisfactory to the members of the district. Common honesty requires that payment be made for the services and materials so received, accepted and appropriated.

In the case of *Watkins v. School District*, 85 Kan. 760, 118 Pac. 1069, the plaintiff sued to recover for extra work performed and materials furnished in the construction of a school building. The contract price was $11,600. The district board voluntarily ordered that the basement be made four feet and four inches below the grade line, which was deeper than the plans and specifications provided for. The district refused to pay for the extra work and material. It was insisted that there was no binding obligation on the part of the district to pay for the extra work for the reason that no contract with the board in session was made. The court said:

"It was also admitted that the building was turned over by the contractor to the school board and by it used for school purposes ever since. Numerous authorities are cited in support of the proposition that a binding contract with the officers of a school board district can be made only when they are in session. Notwithstanding this rule, a district may be required to pay the value of material received by it when it has knowingly permitted it to be furnished and has received and used the same and enjoyed its benefits, and this was the attitude of the defendant appearing from the evidence. (*Sullivan v. School District*, 39 Kan. 347, 18 Pac. 287; *School District v. Sullivan*, 48 Kan. 624, 29 Pac. 1141; *Furniture Co. v. School District*, 50 Kan. 727, 32 Pac. 368; *Mound City v. Snoddy*, 53 Kan. 126, 35 Pac. 1112.)" (p. 764.)

We think these cases are controlling and that the trial court properly, on the findings of fact, which were supported by substantial evidence, rendered judgment in favor of the appellee. The judgment is affirmed.