(No. 6177.   November 25, 1935.)

MURRAY COPENHAVER and JAMES AGENBROAD, Respondents, v. COMMON SCHOOL DISTRICT No. 17 OF CANYON COUNTY, IDAHO, J. R. McCLUNG, C. R. ALLEN and GUS RENSTROM, as Trustees of said District, and MINNIE DAVENPORT, as County Superintendent of Schools, Appellants.

[52 Pac. (2d) 129.]

D. L. Rhodes and Frank E. Meek, for Appellants.

Geo. H. van de Steeg, for Respondents.

AILSHIE, J.—This appeal presents the simple question as to whether the action of the electors of a common school district in voting on the annual budget, specifying the amount to be used for employment of teachers and the total amount to be raised by tax levy for the ensuing year, is binding on the trustees; or if the trustees, notwithstanding such action, may levy, appropriate and expend a larger amount in the employment of teachers.

In March, 1933, the trustees of the appellant, a common school district, entered into contracts with two teachers for their joint services for the ensuing year (1933–34) covering a period of nine months at a total salary of $140 per month. This contract was executed in all respects as required by the school laws. On the following April 15th the annual school meeting was held in the district as provided by statute. The trustees were present and submitted the budget of the previous year and also the proposed budget for the ensuing year as required by sec. 32–701. The budget for the ensuing year was written on the blackboard in the schoolhouse so that all voters could see it. It was thereupon decided by a *viva voce* vote that the budget should be considered item by item, which they proceeded to do. When they came to the item, ''²teachers' salaries, $1260, as contracted,'' it appears:

''that after full discussion and deliberation, it was moved, seconded and carried by a vote of 32 to 12 that the Board of Trustees expend not more than $100 per month for combined teachers' salaries for the ensuing year, and that the school year be nine months, making a total for teachers' salaries for the school year 1933–1934 in the sum of $900.''

Upon completion of consideration of the various items the total allowed was approved in the sum of $1,987.60. No mill levy was voted. The trustees disregarded this action of the electors and proceeded with the contract as previously made by them with the teachers and paid them the total sum of $140 per month until the trial court enjoined them from making further payments in excess of $100 per month. Notwithstanding the action on the part of the electors at the annual school meeting, the trustees thereafter certified to the county superintendent that the electors had voted for 3½ mills for general purposes and 3½ mills for high school tuition, or a total of 7 mills. At the trial, however, they admitted that this certification was erroneous and claimed that they should have certified that the annual meeting had failed to vote a tax at all and that thereupon the trustees had made the 7-mill levy. The county commissioners thereafter made the 7-mill levy as certified by the trustees. The combined levy was sufficient to raise the total sum of $2,333.06, being $345.46 more than authorized by vote of the electors and taxpayers of the district.

The school law at sec. 33–611, I. C. A., provides that "the annual school meeting in common and joint common school districts shall be held on the third Saturday of April." By sec. 32–613 it is provided that the annual school meeting in *common school districts* shall, among other things "determine the length of time school shall be taught in the district for the ensuing year, which shall not be less than seven months." Sec. 32–615 prescribes the duties of trustees, and among other powers conferred provides that they shall have the power to "employ certified teachers on written contract in form approved by the state board of education, a copy of which contract shall be filed with the county superintendent," and "determine, allow, and order paid all legal expenses for salaries, wages and purchases."

Sec. 32–701 contains the following:

"Prior to the annual meeting in common and joint common school districts the board of trustees shall prepare, on forms prescribed by the state board of education and furnished by

the county superintendent, a budget setting forth the expenditures of the district for the past year and the requirements for the school year next ensuing, itemized and classified as follows:

"a. *Personal services.* Including salaries and wages of clerks, principals, teachers, bus drivers, janitors and other employees of the district. . . . .

"Such budget shall be spread at length upon the minutes of the board and shall be submitted to the annual meeting at which meeting the trustees shall attend and hear objections thereto and shall thereafter revise the same, if necessary so as to bring the total of the budget allowance for the ensuing year within the limitations of the revenues to be provided for the respective funds. Copies of the revised budget shall be transmitted to the county superintendent and to the state board of education."

This section requires a minute and detailed statement of all possible expenses for teachers' salaries, each kind of material, equipment, labor, taxes, insurance, etc., that may be required for a school district. These provisions are followed by sec. 32–702 (as amended by chap. 84, 1935 Sess. Laws), which provides:

"The annual meeting, in common and joint common school districts, shall determine the amount of taxes to be raised by special levies, which levies shall not exceed the following maximum rates on each dollar of taxable property in the district for the following purposes, respectively, to wit:

"a. For general school purposes, not exceeding eight mills;

"b. For high school purposes, not exceeding five mills additional. . . . .

"In the common school districts the amount of the special taxes to be raised shall be determined in money, but in joint common school districts the amount of such levies shall be determined in mills."

If the vote of the electors of the district, taken under the foregoing provision, carries no weight or is not intended to be final, it would be useless to submit the budget to them or devote time to debating or discussing it; and there could be

no purpose whatever in requiring them to "determine the amount of taxes to be raised by special levies."

We are unable to escape the conviction that the legislature intended that the electors of the district should have the final voice on this subject. This construction reconciles and gives force to all the provisions of the statute; whereas, to hold that the trustees may disregard the action of the electors emasculates the statute in part and renders nugatory the action of the electors in voting on the budget. Sec. 32–701, *supra,* makes it mandatory on the trustees that they prepare and submit a budget of the expenditures of the past year and their estimate of the requirements for the coming year.

The requirement, that the budget shall set forth the expenditures for the year immediately preceding, must have been made, not for the information of the trustees, but rather for the information of the electors present at the annual meeting, in order that they may have an opportunity to compare the proposed budget with the expenditures of the preceding year; and so to aid the electors in determining the necessity and wisdom of making the expenditures for the ensuing year either in the full amount recommended by the board in its proposed budget; or whether, for example, certain items of the budget ought to be raised or lowered. That the legislature intended to vest exclusive power in the annual meeting, instead of the board, to pass upon the budget, is further emphasized by sec. 32–703, I. C. A., which vests *power in the board* to levy a special tax, to maintain the schools, *only "when the annual meeting neglects or refuses"* to do so. That section is as follows:

"The board of trustees of common school districts shall have power when the annual meeting neglects or refuses to levy a special tax, to maintain the schools, to levy such special tax, not to exceed ten mills upon all the property of the district, sufficient when added to the moneys apportioned by the county superintendent of schools to properly maintain said schools for the required period of time, and the taxes so levied shall be certified to the board of county commissioners and the county assessor in the same manner and

shall constitute a lien to the same effect as though the same were levied by the annual meeting.''

In this respect sec. 32–703 contains the same language as was contained in sec. 880, C. S., which was construed in *Smith v. Canyon County Dist. No. 34*, 39 Ida. 222, 226 Pac. 1070. This court there held:

''Conceding, for the sake of argument, that their [the trustees] action amounted to the making of a levy, did they have that power? It would seem not if the language used in C. S., sec. 880, is to be given its plain and ordinary meaning. The annual meeting had not neglected or refused to make a levy, nor had the electors neglected or refused to hold an annual meeting; and, *therefore, the condition prescribed by the statute as a prerequisite to the exercise of the power by the trustees did not exist.*''

It is clear that the legislature intended that each common school district should have at least seven months of school each year, and to that end, and if necessary, a levy of at least three mills should be mandatory; so that, considering these sections together, and construing them as a whole, it appears reasonably certain that the legislature intended to vest in boards of trustees of common school districts, the power to employ teachers prior to the annual meeting, by written contract, subject to the power of the annual meeting to either provide, by tax levies, sufficient funds to cover the expenditures in the full amount set forth in the proposed budget, when added to other revenues of the district; or to reduce the proposed expenditures, including salaries to teachers, as the electors in attendance at the annual meeting might conclude to be for the best interests of the school district.

The annual common school district meeting provided for by our statute is about the last semblance of a pure, unadulterated democracy we have left under existing laws. It is about the sole remnant we still retain of the original town and township meetings. (*Calloway v. Atlanta Rural H. Dist.*, 129 Kan. 659, 284 Pac. 377; *Farmers' State Bank v. School Dist. No. 100*, 134 Kan. 47, 4 Pac. (2d) 404.) These meetings

involve matters that enter the homes of the citizens and involve the family purse and the training and education of the children of the community. Who can better understand their problems than they themselves? The electors of such districts are in a better position than anyone else to know what they need and want in the way of schools, and, after all, they are the ones who have to pay the bills.

■ We are not unmindful of the recent decision of this court in *Corum* v. *Common School Dist. No. 21*, 55 Ida. 725, 47 Pac. (2d) 889, and we do not recede from the holding announced in that case. It is clearly the duty of the trustees to enter into contracts with teachers. It is equally true, however, that contracts entered into with teachers prior to the annual school meeting are made subject to the provisions of the law, which impliedly become a part of the contract, to the effect that the electors when they meet will have a right to modify the contract as to the amount of wages and also as to the length of school year (provided that it shall not be less than seven months—see sec. 32–613). The statute fixes certain limitations upon the power of the electors as well as upon the powers of the trustees, one of which is that they cannot reduce the school year below seven months, nor can they fix a tax levy higher than 8 mills nor lower than 3 mills. (Sec. 32–703, I. C. A., as amended by chap. 84, 1935 Sess. Laws.)

■ We are also of the opinion that the vote of the electors (38 in favor, none against), fixing the total budget at $1,987.60, was a substantial compliance with the statute in voting a levy, for the reason that it only left a simple mathematical problem to figure the number of mills per dollar this would require to raise the amount of the budget.

Judgment affirmed with costs to respondents.

Givens, C. J., and Morgan and Holden, JJ., concur.

BUDGE, J., Dissenting.—It may be useless and undesirable as a rule to express dissenting views, but I feel bound to do so in the instant case because it is my firm conviction that the majority opinion supplements the statutes, thereby ren-

dering the contracts required to be made by trustees with teachers without any binding force or effect and in effect not contracts at all which I think is contrary to the express provisions of I. C. A., sec. 32–615, which, together with other sections of the statutes involved, will be later discussed.

Respondents, electors and taxpayers of Common School District No. 17 of Canyon County, brought this action for and were granted an injunction restraining Common School District No. 17, the trustees of the district, and the County Superintendent of Schools from expending moneys of the district for teachers' salaries for the school year 1933–1934 in excess of $100 per month, the amount the electors of the district had determined at the annual school meeting should be expended for that purpose for such school year.

There is no material dispute as to the facts, which are briefly as follows: In March, 1933, the trustees of said district entered into written contracts, on forms approved by the State Board of Education, with two teachers for their services for the school term 1933–1934, in which contracts the salaries agreed to be paid aggregated $140 a month. April 15, 1933, the annual meeting of the district provided by law was held, at which meeting the trustees submitted a proposed budget to the electors of expenditures for the year 1933–1934, providing therein for $1,260 for teachers' salaries for nine months among other items. The proposed budget was considered and acted upon by the electors who determined that no more than $100 a month for combined salaries of teachers should be expended for 1933–1934. The budget was then revised by the electors, including $900 for teachers' salaries, voted upon, and the budget so revised was adopted. The electors then proceeded to ballot upon election of trustees and special tax. No amount in mills or money was written in or indicated on the ballot with reference to special tax. Of 59 ballots cast three voted "Tax, Yes" and three "Tax, No." It is contended that the electors could not know and did not understand that it was necessary for them to vote a special tax after having voted upon the budget. The trustees thereafter certified to the

County Superintendent that the electors voted for 3½ mills for general purposes and 3½ mills for high school tuition, or a total of 7 mills. At the trial the trustees asserted that this certification was erroneous and that they should have certified that the annual meeting had failed to vote a tax at all and thereupon the trustees made this levy. The Board of County Commissioners made the levy 7 mills as certified by the trustees. The combined levy was sufficient to raise a total sum of $2,333.06, which created $345.46 in excess of the total budget voted for all school purposes at the annual meeting. Thereafter the board of trustees disregarded the vote of the electors at the annual meeting with respect to the payment of not more than $100 per month for teachers' salaries, and paid the teachers the aggregate salaries of $140 a month until temporarily restrained in this action from paying salaries in excess of $100 a month. Upon the trial of the cause a permanent injunction was issued, relating back to the date of the temporary restraining order, enjoining the payment of salaries in excess of $100 a month, and this appeal was taken.

There are two specifications of error, namely: that the court erred (1) in enjoining the payment of teachers' salaries according to their contracts with the board of trustees, and (2) in finding that the payment of teachers' salaries in excess of $100 a month was an illegal disposition of the funds of the school district, which raise the question, broadly stated, whether the power to fix and determine the salaries of teachers, within certain debt limitations, lies with the board of trustees, or, is a matter to be governed by the action of the electors of the district at the annual school meeting, or, stated otherwise, were the contracts made by the trustees prior to the annual meeting valid and binding on the district, or, were these contracts made invalid or void by reason of the vote taken by the electors at the annual meeting, disapproving the budget with relation to the amount necessary to be raised for teachers' salaries under the contracts by the trustees?

It appears difficult to harmonize the various enactments relating to the raising and expenditure of school funds passed by the legislature from time to time. To attain any degree of harmony of meaning requires that the law be considered and interpreted as a whole, otherwise absurdities may result.

It has been recently held by this court, and that statutes so provide, that common school districts, when validly organized and existing, are bodies corporate and are governed by a board of trustees,—a continuous body. (I. C. A., secs. 32–303, 32–601, 32–602; *Corum v. Common School District No. 21*, 55 Ida. 725, 47 Pac. (2d) 889.) It was also held in *Corum v. Common School District No. 21, supra,* that the board of trustees being a continuous body or entity, the corporation continuing unchanged, and having the power to contract, and its contracts being contracts of the board, the board can make *a valid contract with a teacher for a term of school to begin in the next succeeding school year,* and that the cost thereof is an ordinary and necessary expense authorized by the general laws of the state, and therefore exempt from the provisions of article 8, section 3, of the Constitution. By the provisions of I. C. A., section 32–615, the board of trustees of a school district is empowered as well as charged with the specific duty of employing certified teachers (*Corum v. Common School District No. 21, supra*), subdivision 1 of I. C. A., section 32–615, providing:

"The board of trustees of all school districts in the state of Idaho shall have the power and it is its duty to : . . . .

"1. Employ certified teachers on written contract in form approved by the state board of education, . . . . "

In addition to specifically empowering and making it the duty of the board of trustees to employ teachers by contract, subdivision 6 of I. C. A., section 32–615, further specifically empowers and makes it the duty of the board to :

"Determine, allow, and order paid all legal expenses for salaries, wages, and purchases."

I. C. A., section 32–615, subdivision 1, further provides:

" . . . . that when the board of trustees of the school district fails to enter into written contract for the employment

of teacher or teachers, the county superintendent may withhold the ensuing apportionment and continue to do so until such written contract is entered into and filed as herein provided for."

To "employ" teachers can mean nothing less than that the board is clothed with the power to contract with suitable persons to engage in the work of teaching in the public schools for a fixed salary or compensation. The power to select and to contract with teachers implies an examination as to their fitness and necessarily carries with it the authority to fix the compensation to be paid. (*Leonard v. School Committee,* 241 Mass. 325, 135 N. E. 459.) The character of the services to be expected depends to a considerable degree upon the compensation offered. Upon the trustees rests the burden of selecting competent teachers and the selection of such teachers would depend to a great degree upon the unconditional power of the trustees to agree with teachers upon the salary to be paid. It would be in vain to impose upon the trustees the responsibility and duty of employing "certified teachers on written contract" in one breath and in another to deprive them of the power to fix and determine the salaries of such teachers, consideration being an essential to the contract. However, such is the conclusion reached, in effect, in the majority opinion.

It is provided by I. C. A., section 32-611, that the annual school meeting in common and joint common school districts shall be held on the third Saturday of April of each year and I. C. A., section 32-613, prescribes the business which shall be transacted at the annual meeting in the following language:

"In addition to electing a trustee, or trustees to complete or constitute the board, the annual school meeting shall in common, joint common, rural high, and joint rural high school districts determine the length of time school shall be taught in the district for the ensuing year, *which shall not be less than seven months.*

"Any common or joint common school district, the boundaries of which are not included within the boundaries of any

high school district, shall have the right of deciding by a majority vote of the electors present, subject to the provisions of this act, whether such district shall furnish transportation for high school students residing within such district who attend or expect to attend the nearest high school. The question of furnishing such transportation shall be submitted to the electors of the district and the notice of election shall contain an estimate of the probable cost of furnishing such transportation. If a majority of the qualified voters favor the furnishing of transportation and a majority of the members of the board of trustees approve the same, such transportation may be provided at the expense of the district. The electors at such annual meeting may transact any other legal business submitted in the notice of election which may pertain to school property and education.''

As will be observed from an analysis of the above statute, certain matters enumerated are left to the final determination of the electors of the district. The electors are not given specific power to select or employ teachers nor to determine or fix the salaries of teachers, and I do not believe the statute specifically authorizing the trustees to select and employ teachers and to determine, allow and order paid all legal expenses for salaries is subject to annulment by reason of the latter portion of the foregoing statute providing that the electors at such annual meeting may transact any other legal business submitted in the notice of election which may pertain to school property and education. It appears that the clause just referred to would have reference to objects or purposes of the same general character as those specifically enumerated and not to matters specifically referred to in other statutes.

It is concluded, however, that by reason of the provisions of I. C. A., section 32–701, the electors at the annual meeting are empowered to fix and determine teachers' salaries in passing upon the budget for the school year next ensuing and that the trustees are bound by the sums fixed by the electors as being the amounts they desire to expend. In other words, that in this case the trustees were bound by

the action of the electors, preparing their own budget providing that not more than $100 per month should be expended for teachers' salaries, because of the provisions of I. C. A., section 32–701, providing that the "trustees shall attend and hear objection thereto (the budget) and shall thereafter revise the same, if necessary, so as to bring the total of the budget allowance for the ensuing year within the limitations of the revenue to be provided for the respective funds." Obviously, in the face of such a conclusion, and if such is the meaning to be given this section, it at once appears that the trustees in actuality are not empowered to "employ teachers on written contracts," at least until after some budget therefor has been settled by the electors. It is further apparent that the holding of a term of school may be entirely dependent upon the approval of a budget for salaries and expenses. If such a construction be continued to its logical conclusion, should the electors determine to approve a budget providing no amount for teachers' salaries and other expenses, the hands of the trustees would be tied and of necessity school would automatically suspend for want of the approval of a budget by the electors. Such result might also be attained by the electors voting an entirely inadequate budget.

The general tenor of the law would seem to be such that an arbitrary suspension of any school is specifically guarded against, the policy of the law being to encourage activity on the part of the electors to the end that all unnecessary expense be avoided, but that the electors should not so impede the trustees as to make the maintenance of a term of school an impossibility. I. C. A., section 32–702, as amended by chapter 205, 1933 Session Laws, page 410, provides that each common and joint common school district "*must make a levy*" in the following language:

"The annual meeting, in common and joint common school districts, shall determine the amount of taxes to be raised by special levies, which levies shall not exceed the following maximum rates on each dollar of taxable property in the district for the following purposes, respectively, to-wit:

"a. For general school purposes, not exceeding eight mills;

"b. For high school purposes, not exceeding five mills additional.

"*Provided, each district must make a levy, to be known as the minimum levy, of three mills on each dollar of taxable property in the district or so much of such levy as may be required to provide one hundred and twenty dollars ($120.00) per month for each elementary classroom unit and one hundred and sixty dollars ($160.00) per month for each high school classroom unit, for each month or major portion thereof the school was in session during the preceding year in the* meaning of Section 61–806, Idaho Code Annotated, as amended by this Act, such levy to be included in the  levies provided in subdivisions (a) and (b) of this section; . . . . "

Further guarding against a failure on the part of the electors to make a levy as provided in the foregoing section, I. C. A., section 32–703, provides that the board of trustees shall have power, when the annual meeting neglects or refuses to levy a special tax, to levy such special tax:

"The board of trustees of common school districts shall have power when the annual meeting neglects or refuses to levy a special tax, to maintain the schools, to levy such special tax, not to exceed ten mills upon all the property of the district, sufficient, when added to the moneys apportioned by the county superintendent of schools to properly maintain said schools for the required period of time, and the taxes so levied shall be certified to the board of county commissioners and the county assessor in the same manner and shall constitute a lien to the same effect as though the same were levied by the annual meeting."

It is entirely logical to assume, especially in view of the fact that the legislature specifically empowered and charged the trustees with the duty of contracting for teachers, further provided that the electors *must* make a levy in certain amounts, (I. C. A., section 32–703, as amended by chap. 205, 1933 Sess. Laws), and further provided that the trustees shall have power to levy a special tax when the annual meeting neglects or refuses to do so, that the legislature did not in-

tend that I. C. A., section 32–701, should be so construed as to permit the electors by their action upon the proposed budget to so emasculate the powers of the trustees to the extent that the maintenance of a term of school would become an impossibility, because of the lack of a sufficient budget, although sufficient finances might be provided by the trustees under I. C. A., section 32–703. The opposite conclusion results in the peculiar situation that while the electors cannot prevent the raising of a minimum sum for school purposes, nevertheless they may prevent the holding of school by refusing to accept or make a budget, which refusal would prevent the expenditure of the funds raised by the trustees.

It is to be borne in mind that the funds of a school district are not raised entirely by special tax as provided for in I. C. A., section 32–702, as amended by chapter 205, 1933 Session Laws, and I. C. A., section 32–703, but, that the funds of a school district are made up in part from an apportionment by the county superintendent from the state school fund and taxes collected by the state for the support of the public schools. (Title 32, chap. 8, Idaho Code Annotated, as amended, chap. 205, 1933 Session Laws.) It would thus appear that the phrase used in I. C. A., section 32–701, to the effect that the trustees shall revise the budget, *"if necessary,* so as to bring the total of the budget allowance for the ensuing year within the limitations of the revenue to be provided for the respective funds,'' does not mean necessarily that the trustees must strictly follow the budget as adopted or suggested by the electors, but rather, if necessary, must revise the budget so as to bring the total of the budget allowance for the ensuing year within the limitations of revenues to be provided from all sources for the respective funds. The statutes assure the district of a minimum fund upon which the trustees could determine their budget, and, if so determined, that is, if the trustees kept their budget within the minimum fund, no action of the electors under I. C. A., section 32–701, would necessitate a revision of the budget "so as to bring the total of the budget allowance for the ensuing year within the limitations of the revenues to be

provided for the respective funds." It would appear that such a situation would not arise except in the event the budget prepared by the trustees exceeded the amount of the minimum revenue to be provided in any event plus the district's apportionment. If the budget exceeded the minimum levy plus the apportionment the electors of the district may determine whether such extra levy should be made and should they refuse to make such extra levy and refuse to adopt such budget a necessity for revision of the budget "so as to bring the total of the budget allowance for the ensuing year within the limitations of the revenue to be provided" might exist. (I. C. A., secs. 32–701 and 32–702 as amended by chap. 205, 1933 Session Laws, and I. C. A., sec. 32–703.)

It appears that the payment of the teachers' salaries as proposed by the budget submitted, and as contracted to be paid by, the trustees would not exceed the revenue to be provided for the district. Whatever the intent of the legislature may have been in providing for the submission of the proposed budget to the electors of the district their action under the facts of this case was not a conclusive determination upon the trustees resulting in avoiding the contracts made with the teachers, and it is my opinion that the judgment should therefore be reversed.