W. O. HAMPTON ET AL. v. BOARD OF EDUCATION AND BOARD OF COUNTY COMMISSIONERS OF NEW HANOVER COUNTY.

(Filed 22 February, 1928.)

1. **Schools and School Districts—Contracts for Teachers' Salaries—Liability of County Commissioners—School Budget.**

When the board of trustees of a school district recommends public school teachers for the ensuing term of schools to the county superintendent of education, his contracts with teachers so recommended, made in accordance with the provisions of the statute relating thereto becomes a binding obligation upon the county commissioners when approved by it, and is in conformity with the budget of the county board of education, or when it is later approved by the county board of commissioners under the provisions of the statute. 3 C. S., 5533, 5605, 5572, 5571, 5559, 5561, 5516.

2. **Same.**

When there is one month for which the teachers of a school district have not been paid in accordance with their contracts of employment, and

from the sum total of the approved budget of the board of education there remains a sufficiency to pay them, the board of county commissioners is liable for its payment, the statute not requiring the approval of the county commissioners for each separate item of the school budget.

**3. Same—"Budgeting Forward."**

Where the county board of education, by paying its teachers for a term of school have done so by nine monthly installments, for the calendar year; instead of by twelve installments, and in consequence the teachers have not been paid for three months of the year, a resolution of the board of county commissioners authorizing the county board of education in effect to pay them out of the allowance made by its budget for the year following is a "budgeting forward" approved by the board of county commissioners, and is binding upon the available funds accordingly, when the other requirements of the statutes on the subject are complied with. The provisions of chapter 277, Public Laws of 1927, have no application under the facts of this case.

ADAMS, J., concurring in result; STACY, C. J., dissenting.

CIVIL ACTION before *Devin, J.,* at October Term, 1927, of NEW HANOVER.

The plaintiffs are public school teachers of New Hanover County, and made contracts with the defendant board of education not later than April, 1926, for services for the year 1926-27. In accordance with such contracts plaintiffs were to render services beginning 15 September, 1926. Relying upon said contracts the plaintiffs entered upon the discharge of their duties on 15 September, 1926, and taught in the public schools of New Hanover County in the districts for which they were respectively employed for the full term of nine months, and each of plaintiffs has fully complied with all the terms and conditions prescribed in said contracts. Payments for said services have been made up to 15 May, 1927, but installments for salaries maturing 15 June, 15 July, 15 August, and 15 September, 1927, have not been paid, said installments aggregating $107,061.05.

There was judgment for the plaintiffs against both defendants, from which judgment the board of county commissioners of New Hanover County appealed.

*Varser, Lawrence, Proctor & McIntyre for plaintiffs.*
*J. O. Carr for Board of Education.*
*Marsden Bellamy and Bryan & Campbell for Board of Commissioners for New Hanover County.*

BROGDEN, J. Three questions of law are presented by the record:

1. What are the legal limitations upon the power to contract with teachers?

2. What are the legal essentials of a valid teacher's contract?

3. Are the contracts of plaintiffs and others similarly situated valid and enforceable?

(1) The limitations of liability of the county commissioners and counties with respect to debts contracted by boards of education are prescribed by statute and may be classified as follows:

(a) But if the county board of education shall wilfully create a debt that shall in any way cause the expense for the year to exceed the amount authorized in the budget without the approval of the county commissioners, the indebtedness shall not be a valid obligation of the county and the members of the board responsible for making the debt may be held liable for the same. 3 C. S., 5464.

(b) And no contract for teachers' salaries shall be made during any year to extend beyond the term of a majority of the committee, nor for more money than accrues to the credit of the district for the fiscal year during which the contract is made. 3 C. S., 5533.

(c) And the county commissioners, after 3 March, 1923, shall not be liable for any debt, other than loans from the State, incurred by the county board of education in excess of the amount set forth in the May budget, unless the making of the debt was approved by the county commissioners. 3 C. S., 5605.

From these provisions of the law it is obvious that the county commissioners are liable for all amounts set up in the budget by the board of education for the purposes prescribed therein, and, in addition, for such further expenditures as said board of commissioners may approve.

(2) A valid teachers' contract, imposing liability upon the county commissioners, must conform to the following statutory requirements:

(a) Teacher must be at least 18 years of age. 3 C. S., 5572.

(b) The teacher must be duly certified by the State Board of Education. 3 C. S., 5571.

(c) The contract must be signed by the county superintendent on the recommendation of the committee or board of trustees of the district in which they are to teach. 3 C. S., 5559.

(d) The salary fixed by the county board of education must be in accord with the authorized salary schedule. 3 C. S., 5561.

(e) The contract must show the salary allowed and be approved and signed by the county superintendent and copy filed with him. 3 C. S., 5516.

(f) By virtue of the limitations of liability heretofore stated the salary or amount of money specified in the contract must be included in the adopted budget or otherwise approved by the county commissioners.

(3) Considering the limitations prescribed by statute and the essentials of a valid contract, the question thereupon immediately arises: Are

the contracts of plaintiffs and other teachers similarly situated valid and enforceable? This is the vital point in the case, and the one about which the controversy centers and from which it radiates. It is the Verdun before which and around which the parties wage desperate battle.

In order to develop the principles of law applicable it is necessary to recur to the facts found by the trial judge. In 1920 the board of education adopted the plan of paying the salaries of teachers in twelve equal installments on the 15th of each month. The fiscal year began 1 July and ended 30 June. The teachers entered upon the performance of their duties on 15 September in each school year, and hence the first installment of salary became due on 15 October. The school term was nine months and the salaries of teachers were budgeted for the school term of nine months. It was clear that a budget of nine installments could not cover a payment of twelve installments. In this situation what could be done? Two courses only were open: First, to budget salaries to cover twelve months instead of nine, or twelve installments instead of nine; second, to overlap or consolidate the budget of one year with that of the succeeding year. The matter remained in this uncertain condition until 30 June, 1923, the end of the fiscal year. On that date there was an unexpended budget balance for schools amounting to $5,585.98. As we construe the record the budget for 1923-24, made in May, 1923, provided for the first installment of teachers' salaries to be paid 15 October, 1923, and thereafter on the 15th of each month for nine months, which date expired 15 June, 1924, which was the end of the school year. Therefore the July, August and September, 1924, salaries for teachers would be outside the May, 1923, budget, and also not included in the May, 1924, budget for the reason that the budget for teachers' salaries was based upon a school year of nine months and included only nine installments, beginning on 15 October in each year and expiring 15 June of the succeeding year. Thereupon on 30 June, 1923, the board of county commissioners adopted the following resolution: "It being understood that the teachers' salaries for July, August and September, 1924, are to be paid out of the 1924-25 budget." This resolution authorized and approved the overlapping or consolidation of the budget for the months specified, and this custom, so established and approved remained in force up to the school year 1927-28. At this time the board of education refused to "budget forward" salaries for July, August and September upon the theory that these salaries constituted an indebtedness accruing prior to 1 July, 1927, within the purview of the County Finance Act of 1927.

In April, 1926, the plaintiffs made contracts with the board of education in accordance with the formalities prescribed by law for the year

1927-28. They entered upon the discharge of their duties on 15 September, 1926, and continued to render faithful and efficient service in full compliance with their contracts. They were paid up to and including installments maturing 15 May, 1927. The installments maturing on 15 June, July, August and September, 1927, have not been paid. These overdue and unpaid installments aggregate $107,061.05, for which sum this suit is brought against the board of education and the board of county commissioners. The total sued for is composed of two items: (a) June, 1927, salaries, amounting to $27,071.51, and (b) July, August and September, 1927, salaries, amounting to $79,989.54. The contracts with teachers for 1926-27 required a sum for teachers' salaries exceeding the amount specified in the budget for that purpose by over $27,000. Hence when the June salaries, amounting to $27,077.61, fell due on 15 June, there was no money with which to discharge the indebtedness.

The board of county commissioners contends that it is not liable for this item of June salaries for two reasons: (a) The law, 3 C. S., 5464, and 5606, provides that the commissioners shall not be liable in any sum in excess of that set forth in the May budget, unless they approve the contracting of the debt or debts in excess thereof. (b) That said board has not consented to the contracting of said debts in excess of the budget, but on the contrary, by resolution, has expressly refused to approve any excess. It appears that the board of commissioners on 7 July, 1924, approved a budget of $400,000 for the board of education, covering a period of twelve months beginning 1 July, 1924, and ending 30 June, 1925. But in said approval occurs this language: "And that this board will not in anywise be responsible for any excess expense of the board of education over the said revised budget of $400,000," etc. In July, 1926, when the board of county commissioners approved the budget, it adopted the foregoing resolution: "This board will not in anywise be responsible for any excess expense by the board of education beyond the said amount for $423,350, and this board requests the board of education to give its assurance that it will comply with this request."

Neither of these contentions is upheld. 3 C. S., 5559, provides that when the contract of a teacher is signed by the superintendent on the recommendation of a committee or board of trustees "it is a valid contract and the teacher is properly elected." In other words, the statute itself expressly directs and empowers the employment of teachers and expressly provides a schedule by which their salaries shall be determined. A teacher's salary, under such a contract, then becomes a debt under the law. The board of commissioners is not liable for any debt "in excess of the amount set forth in the May budget" unless the making of the debt was approved. It appears, however, that the total amount of

teachers' salaries for the year 1926-27 set up in the May budget, was $307,468.50, and that contracts were actually made aggregating $333,-870.30. The contracts so made were within the "amount set forth in the May budget," because the May budget "set forth the amount of $423,-350." Of course, the contracts so made exceeded the particular item in the budget providing for teachers' salaries, but there are no words in the statute requiring the county commissioners to specifically and independently approve each item in the budget. Indeed, it appears from the exhibits filed that the minutes of the board of county commissioners do not show the details or items of the budgets for any year except 1926-27. 3 C. S., 5601, provides: "If the board of county commissioners shall approve the total amount of the budget, it shall levy sufficient returns, after deducting the amount to be received from the State, to produce the amount asked for in the budget," etc. If the contention of the board of commissioners should be correct, no teacher could afford to sign a contract until the budget was made and approved by the county commissioners. Then she would be compelled to wait until all contracts for all districts in the county had been duly filed with the county superintendent in accordance with the law. She would then be compelled to ascertain what salary every other teacher in the county was receiving and then after securing this total, she would then be compelled to go to the auditor's office or some other place and audit the budget in order to ascertain if her contract was included within the particular item appropriated for teachers' salaries. And after all this was done she could then sign her contract and leave a copy with the county superintendent. Even then, perhaps, she might be compelled to stand over the board of education with a club to prevent it from spending the money so appropriated for some other purpose in order to be certain that she did not work for nothing. Such a state of affairs, of course, would impose intolerable burdens upon the teachers. Frankly, it is conceded that various sections of the school law upon this subject are confusing, and the board of county commissioners, under the law as written, has strong justification for the contention made by it with reference to this aspect of the case.

With reference to the resolutions passed by the board of county commissioners notifying the board of education that the county would not be responsible for exceeding the budget, it appears that such resolutions had no reference to teachers' salaries, but to the totals only. But, however this may be, the trial judge finds as a fact that the board of county commissioners is indebted to the board of education in the sum of $40,651.91 "on account of funds which belong to the board of education as a matter of law and to which said board of education was entitled,"

etc. As this fund has never been appropriated to any specific purpose the board of education has the right to use it for any lawful purpose, and hence it could be used in paying June salaries, amounting to $27,071.51.

Now, with the June salaries disposed of, the question occurs as to the legal status of the July, August and September salaries. These salaries stand upon a different footing. The defendant contends that the resolution of the board of county commissioners of 30 June, 1923, meant and was intended to mean that the school year and fiscal year were to become coterminous and no more. But as we interpret the resolution, it undertook to approve a budget beyond the fiscal year, expiring 30 June, 1923, by appropriating out of the budget of the succeeding school year a sum sufficient to pay salaries for the months of July, August and September. By express terms the resolution recognized, approved and authorized the "budgeting forward" of teachers' salaries for the months specified. The defendant further contends that even though the said resolution recognized the principle of "budgeting forward," still the "budget would be the limit of liability without further action on the part of the commissioners." Upon its face this argument is built upon the rock of logic, but as the county commissioners approved the budget as presented and then consented to and authorized the board of education to "budget forward" salaries for the months specified, then of necessity this constituted "further action" by the board and was an amendment to the budget expressly increasing it by the amounts necessary to meet the salaries for July, August and September. So that, while the budget would still be the limit of liability, the term budget, under these circumstances, must be understood to mean the amended budget or consolidated budget, which included salaries for July, August and September. In other words, salaries for July, August and September, while they did not appear in the May budget presented by the board of education, they did appear in the amended or consolidated budget resulting from the said resolution of the county commissioners adopted 30 June, 1923, for the reason that the said board has expressly approved the indebtedness, by enlarging the budget so as to include such installments.

The defendant board of county commissioners asserts that the provisions of chapter 277, Public-Local Laws 1927, and the election held thereunder constitute a mandate forbidding the payment of the indebtedness in controversy. Said act in section 2 thereof, by express terms, referred to teachers' salaries in excess of the amount specified for that item in the budget. There is no language in the act which could be construed as covering salaries for July, August and September. Moreover, the act provided that its provisions should not become effective until

approved by the majority of qualified voters of New Hanover County. A majority of the qualified voters did not approve the act authorizing the county commissioners to assume and pay the deficit created by the board of education. Hence this act disappears from the case. But notwithstanding the said act of 1927, if the indebtedness in controversy was valid and enforceable, and it had been duly incurred before the passage of the act, then the contractual rights of the plaintiffs could not be impaired thereby.

We hold therefore that the contracts of the plaintiffs were valid and enforceable. We hold further upon the findings of fact set out in the record that all of said indebtedness, including the said sum of $40,645.91, is a valid indebtedness of the board of commissioners of New Hanover County and that all of said indebtedness was incurred prior to the first day of July, 1927, and comes within the purview of section 8, subsection (j), chapter 81, Public Laws 1927.

Affirmed.

ADAMS, J. (concurring in result) : While the questions involved are by no means free from difficulty, I have concluded after a close scrutiny of the record that upon the facts found by Judge Devin the judgment should be affirmed, although the reasons upon which my conclusion is founded differ in certain respects from some of those given in the opinion of the Court. The plaintiffs are entitled to the agreed value of their service based upon a valid contract, and to deny relief is to withhold a right. *Ubi jus ibi remedium*—there is no wrong without a remedy, for want of right and want of remedy are reciprocal.

STACY, C. J., dissenting : Desirable as it may be to award the plaintiffs judgment for their salaries—and such is quite desirable—I think the Court has departed from the law in order to do so on the present record. For this reason, I am compelled to dissent. No authority is cited, and none has been found, for overriding statutory provisions on an unsupported argument of *ab inconvenienti*. In this respect, the case is probably *sui generis*.

It is specified in 3 C. S., 5596, that the May budget, to be prepared by the county board of education, "shall provide for three separate school funds: (a) a salary fund; (b) an operating and equipment fund; and (c) a fund for the repayment of all notes, loans and bonds," with further provision as to what each fund shall contain.

Acting under authority of this section and in obedience to its command, the board of education of New Hanover County in the year 1926 duly submitted the following May budget for the school year 1926-1927 :

DETAILED APPROVED BUDGET, 1926-1927.

| | |
|---|---:|
| Teachers' salaries | $307,468.50 |
| Supt. and Asst. Supt., salary | 9,375.00 |
| Board of Education, per diem | 408.00 |
| Superintendent Public Welfare | 1,200.00 |
| Office expense, clerical and supplies | 5,400.00 |
| Salary and bond, Treasurer | 1,430.00 |
| Fuel, water and electric current | 10,500.00 |
| Janitors | 15,000.00 |
| Supplies | 5,500.00 |
| Insurance | 3,184.00 |
| Rents | 1,200.00 |
| Interest on short loans | 7,500.00 |
| Trucks and transportation | 16,415.00 |
| Repairs | 8,500.00 |
| Clerks | 4,620.00 |
| Jeans Sup. | 390.00 |
| County Demonstration Agent | 400.00 |
| Furniture and fixtures | 1,000.00 |
| Principal, State loans | 11,850.00 |
| Interest on State loans | 11,259.50 |
| Expense, Superintendent | 750.00 |
| Total | $423,350.00 |

This budget was approved by the commissioners, with admonition to the board of education that they would not be responsible for any expense in excess of the budget, the total amount of which has since been paid to the board of education.

3 C. S., 5605, provides: "And the county commissioners, after 3 March, 1923, shall not be liable for any debt other than loans from the State, incurred by the county board of education in excess of the amount set forth in the May budget, unless the making of the debt was approved by the county commissioners."

It is admitted that the contracts for teachers' salaries for the school year 1926-1927 were in excess of $307,468.50, the amount set forth in the budget for that purpose. But the court holds that by reason of the "budgeting forward" arrangement adopted in 1923, three years prior thereto, the action of the commissioners in approving the May, 1926, budget amounted in effect to amending the budget by adding a sum sufficient to cover teachers' salaries for the months of July, August and September, 1927, though not shown therein, and approving it as thus amended, notwithstanding the intervening admonitory resolution adopted

by the commissioners in 1924, and repeated in substance in 1926. I do not think the record supports this conclusion.

It may be safely asserted that if the action of the commissioners had the effect of amending the budget and approving it for a much larger sum than that shown therein for teachers' salaries (not then known perhaps), neither the board of commissioners nor the board of education so understood it; for the record clearly discloses a studied effort on the part of the commissioners to confine the board of education, in its expenditures, to the amounts set out in the budgets.

Furthermore, if the contracts made for teachers' salaries were within the "amount set forth in the May budget," though in excess of the amount designated for that purpose, "because the May budget set forth the (total) amount of $423,350.00," as stated in the Court's opinion, does it not follow as a necessary corollary, if the same rule is to apply equally to other matters, that the limit to be expended for each item in the budget is the total amount of the sums designated for all the items enumerated therein? If so, the ultimate liability of the county, under such a budget, would be the sum total of all the amounts multiplied by the number of items in the budget. That is to say, the ultimate liability of New Hanover County, under the budget above set out, would be $423,350 for each item designated therein, or a total of $8,890,350 (plus whatever sum should be added under the doctrine of "amendment by budgeting forward"). This may be the law, but I cannot think so; nor is it to be assumed that the logic of the Court's opinion will be pursued beyond the exigencies of the present case.

The amount "set forth" in the budget with respect to any given item, as I understand it, means the amount designated therein for that particular purpose; otherwise, why should the May budget provide for three separate school funds? The amount set forth for teachers' salaries in the May budget, now under consideration, is $307,468.50, and not $423,350.00.

The plaintiffs may be entitled to recover, even as against the board of commissioners of New Hanover County, for which reason I think the case should be remanded for further findings. But, in my opinion, this right has not been made to appear on the present record. However, my views of the case have not prevailed, and as they are quite different from those expressed in the opinion of the Court, it would serve no useful purpose to write them out in a dissent. *Cui bono?*

I am glad the plaintiffs are to recover their salaries, as they ought to recover them, but I cannot approve the method adopted nor agree with the Court in its interpretation of the law. The same result might easily be accomplished on a fuller finding of facts, without dissent on the part of any one, but as a majority of the Court is satisfied with the present record, my concurrence is not needed.