Argued April 28; affirmed June 7; rehearing denied July 26, 1932

# STODDARD *v.* DISTRICT SCHOOL BOARD FOR SCHOOL DISTRICT NO. 91 IN JACKSON COUNTY ET AL.

## NEE *v.* SAME (two cases)

## HOOVER *v.* SAME

(12 P. (2d) 309)

*Kelly & Kelly* and *Porter J. Neff,* all of Medford, for appellants.

*G. M. Roberts,* of Medford (Wm. M. McAllister, of Medford, on the brief), for respondents.

KELLY, J. When the contracts in suit were authorized by the defendant, school board, the four plaintiffs herein were, for sometime theretofore had been, and, until said school ceased for its summer vacation, continued to be, engaged in teaching in said school district No. 91. On or about May 16, 1930, the school closed for its summer vacation.

The cause of the controversy, giving rise to this litigation, is the difference of opinion between rival factions in the school district as to the amount which should be expended in conducting and maintaining said school. One faction sought to reduce expenses, the other opposed such reductions.

On November 21, 1929, at a metting of the voters of the district, the budget, theretofore prepared by the board of directors, was substantially reduced and a corresponding tax was levied.

At a meeting held November 30, 1929, the board by resolution declared the voters' meeting of November 21, 1929, illegal and void, and called another meeting of the voters to be held on December 16, 1929. This second meeting of the voters of the district was held at the time fixed, and the budget, as originally prepared, was adopted and a corresponding tax was levied.

On or about the 18th day of December, 1929, a petition was prepared by the three legal voters of the district asking the district boundary board to review and lower the tax so levied. The boundary board caused notice to be given that a hearing upon this petition would be had on January 3, 1930. When heard, the budget was reduced.

In the meantime, namely on December 28, 1929, the same being the last Saturday of that month, the contracts in suit were authorized by the board of directors at a meeting attended by but two of the three directors, director Courtright being absent. There was no call for this meeting and no notice of it was given other than that resulting from the action of the board fixing the time of regular meetings. Such action occurred on October 22, 1929, at a meeting attended by all three directors, at which time a resolution was offered changing the time for the regular meetings of

the board from the first Wednesday in the month to the last Saturday in the month. Two members of the board voted for this resolution, and one member, Mr. Courtright, voted against it.

A change in the personnel of the board having occurred, thereafter, at a meeting held on May 5, 1930, a resolution was passed by the board declaring the contracts in suit to be invalid and illegal and providing that plaintiffs "be and they are hereby discharged at the termination of the present school term; and that the board proceed at once to employ new teachers at salaries in accordance with or under said revised budget in places of said discharged teachers, and to enter into contracts with such new teachers."

At said meeting of May 5, 1930, a further resolution was passed to the effect that certain persons therein named, constituting in number the usual teaching staff for said district, were thereby hired as teachers in said district for the term of nine months at salaries as stated in said resolution. None of plaintiffs was among those named in the last mentioned resolution.

On May 19, 1930, charges were preferred against plaintiffs, and two other teachers, by the members of the board, which, in so far as they are pertinent to the issues herein, are as follows:

"Before the School Board of District No. 91.

"To Rhea Hoover, Hazel Taylor, William Joe Nee, Mrs. William Joe Nee, Mrs. N. B. Stoddard and Naomi Van Groos, Teachers in said District. } Notice.

"To the above named teachers:

"You and each of you will please take notice that the undersigned members of School Board of District No. 91 have filed the following charges against you as good cause for your dismissal in said District from the

teaching staff of said District, said charges and grounds being outside of those involved in dismissing you for breach of your contracts with said School Board to-wit:

"1. That on or about the 21st day of November, 1929, at a duly and regularly called meeting, held in said District, for the purpose of voting for a budget for the year 1930-31, the said School District at said meeting, adopted a budget, fixing certain lower salaries for the teachers of said school district, and eliminating the position of music teacher.

"That thereafter you and each of you entered into a conspiracy with one Elizabeth Simmerville, a pretended director of said School District, but who was in truth and in fact a resident of Lane County, Oregon, and not a qualified director of said school district, together with certain other persons, to overthrow said budget, by declaring the same illegal, and holding another election, in violation of law, and the usurpation of a function of the courts; and that thereafter prior to said election you went about said district soliciting and canvassing for votes for said higher budget, and that thereafter on the 16th day of December, 1929, at a pretended election, you procured one John Doe Skinner to be present at said meeting to qualify you as taxpayer voters at said election. That as a result of these political activities of yours, a budget retaining said music teacher, and your high salaries, was passed at said meeting.

"That thereafter three certain taxpayers of said District appealed said budget to the District Boundary Board of Jackson County, Oregon, and that pending said appeal and in derogation of the rights of said taxpayers and appellants, you entered into teachers contracts for year 1930-31, with the said Elizabeth Simmerville and one W. T. Roberts, notwithstanding the fact, that the school year had barely commenced, and you had existing contracts until June, 1930.

"That thereafter the District Boundary Board at a due and legal meeting, at which you appeared in

person and by counsel, and after a full hearing upon the said budget, made and entered an order reducing the salaries of you and each of you, and fixing them for the year 1930-31 at greatly reduced amounts, and eliminating the position of music teacher.

"That thereafter you and each of you in violation of said budget revised by the County Boundary Board insisted on the registration of such contracts executed prior to said Boundary Board hearing, and after such appeal was taken, with the County Superintendent of Schools of Jackson County, Oregon, in violation of law, in derogation of the rights of the taxpayers of said district, and in defiance of the findings of the County Boundary Board of Jackson County, Oregon, and without regard for the fact that such conduct would run said school district into debt.

"2. That at the present time you are guilty of unethical and improper conduct in soliciting votes for the coming annual election of said school district, and that during the past year you have solicited votes for the different matters coming before the voters of said district, at special meetings of said District. That as a result of your political activities, you have caused a division among the patrons of said school district, and aroused enmities therein.

\* \* \* \* \*

"8. That by reason of said political activities and the defiant attitude of you and each of you toward the Boundary Board, and the taxpayers, the schools have become divided, and you and each of you are insubordinate to the present school board.

"9. That on June 2, 1930, Monday at 8:00 P. M., at the grade school in said district, the said charges will be heard, and you and each of you are hereby notified to appear at said time and answer the same.

"Dated at Butte Falls, Oregon, this 19th day of May, 1930."

In June, 1930, after a hearing thereupon, said charges were sustained by the board. Plaintiffs prose-

cuted an appeal to the county school superintendent from the order of the board upon said charges; and upon August 15, 1930, the county school superintendent rendered a decision thereon refusing to affirm or approve the said order of the board. No appeal was taken by the board from said order of the county superintendent.

Plaintiffs presented themselves and tendered their services as teachers at the opening of the school in September, 1930, and continued to present themselves for services each day during the school year, but were not permitted by the board to perform any service under their contract.

The defendants contend that plaintiffs' contracts with the school district, authorized by the board of directors at the meeting held on December 28, 1929, and which are the bases of these actions, are illegal and void for the following reasons:

(1) Because the meeting of the board, at which they were authorized, was not a legal meeting for any purpose for the reason that the same was not called pursuant to section 35-1101, Oregon Code 1930; no call for the meeting having been made; no notice having been given; the same not having been called by common consent of the members of the board; and one of the members of the board, Courtright, not having been present and having taken no part therein.

(2) Because the meeting, even if otherwise it had been legal and regular, was not one at which teachers could be employed for the reason that it had not been called for that purpose pursuant to section 35-1105, Oregon Code 1930.

(3) Because the contracts are illegal and ultra vires in that they incur an obligation on the part of the district in excess of any moneys available to meet

the same, and their effect, if sustained, would be to defeat the rights given by section 35-1009, Oregon Code 1930, to the voters of the district and to the boundary board to determine the amount of expenditures for maintenance of the school during the ensuing year.

(4) Because, upon the face of the record, the contracts were entered into for the purpose of defeating the rights given to the voters of the district and the boundary board by section 35-1009, Oregon Code 1930, to determine the amount to be expended for maintenance of the schools during the ensuing year and the same are therefore void because contrary to public policy.

The first question thus presented is whether the board of directors of a school district of the third class had authority to fix a time for stated, general or regular meetings. It will be noted that the first sentence of section 35-1101, Oregon Code 1930, provides that—

"The directors in their official capacity shall be known as the district school board, and shall hold such meetings as are necessary to transact the business of their office."

Section 35-1105, ibid, refers to general regular and special meetings. Section 35-1115, ibid, provides:

"Any duty imposed upon the board as a body must be performed at a regular or special meeting."

■ It is true that we find no direct statement in the statute expressly fixing, or authorizing the district school board to fix, the respective dates for holding general, regular or stated meetings in districts of the third class. The provision of the statute, as above indicated, to the effect that regular or general meetings

may be held, impliedly authorizes the board, by appropriate motion or resolution, to prescribe the requisites of such regular or general meetings, namely, fixed and appointed times at specified and regular intervals therefor.

The second question confronting us is whether notice, that the purpose of the meeting is to employ teachers, must be given to each director in order to enable the board at a regular meeting to make a valid contract with the teachers for their services. In order to determine this question we must construe the language of section 35-1105, Oregon Code 1930.

"The board, at a general or special meeting called for that purpose, shall hire teachers and shall make contracts with such teachers," etc.

When this provision of the statute is construed in the light of the provision of section 35-1115, Oregon Code 1930, to the effect that any duty imposed upon the board as a body must be performed at a regular or special meeting, we cannot escape the conclusion that the well known distinction between a regular meeting and a special meeting obtains.

██ A meeting called for a special purpose is a special meeting. A regular meeting is one not specially called, but one convened at a stated time and place pursuant to a general order, statute or resolution.

██ In the absence of any statute to the contrary, the board of directors of a school district, if authorized to employ teachers, would have the right to exercise that authority at any regular meeting. To give section 35-1105, Oregon Code 1930, the construction which defendants insist upon would be to declare that contracts employing teachers could be authorized by the board of directors only at special meetings. In other words,

it would be tantamount to striking the word "general" from the clause of that section above quoted. We think that the intention of the statute is best reflected by treating the word "general" as synonymous with the word regular; and by construing the clause as if the word meeting preceded the disjunctive which follows the word "general."

Giving the statute this construction, enables all persons affected by contracts for the services of teachers to be assured that if the same are authorized at a regular meeting of the board, at which a quorum is present, there need be no inquiry or proof with respect to notice to the individual members of the board and its clerk either as to the time and place of meeting or as to its purpose: 56 C. J. 337, section 210, note 73 and cases cited.

As stated, defendants urge that the contracts in suit should be held to be invalid because by their terms obligations were contemplated in excess of any moneys of the district available to meet them; and, if sustained, the rights of the voters of the district and of the boundary board to determine the amount of expenditure would be defeated.

The statutes of Indiana and North Carolina provide that the salary agreed upon for a teacher's services must conform to a budget adopted pursuant to law: *Mitcheltree School Township v. Baker*, 53 Ind. App. 472 (101 N. E. 1037) ; *Hampton v. Board of Education*, 195 N. C. 213 (141 S. E. 744). The statute of Oregon does not so provide; but it is contended by defendants that, as a matter of public policy, this restriction should be implied.

The Court of Appeals of the District of Columbia passed upon a somewhat similar question in the case of *District of Columbia v. Marsh*, 47 App. D. C. 59.

There, in the District Organic Act of 1878, was a provision forbidding the commissioners to create contract obligations in excess of existing appropriations. The Act of 1906 provided for the appointment of a board of educators. We quote from the opinion:

"The board is not prohibited, as are the District Commissioners, from creating obligations in excess of the appropriation. The intent of Congress in this particular seems clear. We must assume that Congress knew of the restriction upon the commissioners, and of the adjudication to the effect that it applied to the board of education as formerly constituted. Hence, if, when endowing it with the powers of an independent agency of the government, it had been intended to so restrict the board as it exists at present, provision to that effect would have been made in the act. Our interpretation of the intent of Congress is further supported by a provision of the Deficiency Appropriation Act of March 4, 1909 (35 Stat. at L. 907 chap 298), which provided for the payment of the salaries of a number of teachers in excess of those provided for by prior appropriation, but whose services had been necessary in the judgment of the board of eduction to keep the schools of the District in operation. It would seem that if it were the policy to limit the expenditures of the board to the amount originally appropriated, Congress, when confronted by a deficiency, would, by prompt enactment, have placed upon the board a restriction similar to that imposed upon the commissioners of the District. But this has not been done, evidently for the reason that it is impossible to estimate in advance the exact teaching force which will be required."

■ We are of the opinion that in the absence of a statutory or constitutional provision restricting the power of the board of directors to make contracts for the services of teachers to those contracts only which conform to the budget such restriction should not be implied.

With respect to the case of *Jay v. School District No. 1,* 24 Mont. 219 (61 P. 250), cited by defendants, the statute made it a misdemeanor for the school board to employ any teacher for a period of more than three months. The plaintiffs' assignor had been employed for nine and one-half months; and, by statute, the trustees were prohibited from drawing a warrant to pay any outstanding claim unless there was money in the county treasury to the credit of the district. The court held that the contract was invalid and that for the last month's services actually rendered the district by plaintiffs' assignor, and for which no payment had been made, no judgment could be entered against the district because the complaint affirmatively alleged facts showing that there were no funds in the treasury to the credit of the district.

*Wolfe v. School Dist. No. 2,* 58 Wash. 212 (108 P. 442, 27 L. R. A. (N. S.) 891, 137 Am. St. Rep. 1057), applies a statute which makes it unlawful for the directors of a school district to contract an indebtedness against their district in excess of a sum equal to the cash quarterly apportionment next following the date on which taxes become delinquent. It was stipulated that at the time the contract was executed by plaintiff, a teacher, and defendant, a school district, the board of directors of defendant had incurred an indebtedness against the district in a sum exceeding the aggregate amount apportioned to said district at the last quarterly apportionment next following the date upon which taxes became delinquent prior thereto.

With reference to the case of *Calloway v. Atlanta Rural High School District No. 2,* 129 Kan. 659 (284 P. 377), the court was controlled by the following considerations. School district boards are elected under the laws of Kansas at an annual meeting of the voters

of the district. The statute prescribes that the qualified voters, at each annual or special meeting duly called, may determine the length of time a school shall be taught in their district for the ensuing year. The statute also fixes the powers of school district meetings and provides, among other things, that at such meetings the voters have the power "to vote a sum annually not exceeding the limit fixed by law as the meeting shall deem sufficient for the various school purposes and for the payment of any floating indebtedness of the district and distribute the amount as the meeting shall deem proper in the payment of teachers' wages."

This statute differs from the Oregon statute. The authority to adopt a budget, levy a tax and adjourn being the only rights given to the electors at the annual meeting by the Oregon statute.

The case of *Lacy v. Board of Education,* 98 Okla. 237 (224 P. 712), cited by defendants, is controlled by a statute which provides:

"It shall be unlawful for * * * the trustees of any * * * school district board * * * to make any contract for, incur, acknowledge, approve, allow or authorize any indebtedness against their respective municipality * * * in excess of the estimate made and approved by the excise board for such purpose for such current fiscal year, or in excess of the specific amount authorized for such purpose by a bond issue," etc.

The contracts in that case were for salaries amounting to a sum in excess of the estimate made and approved by the excise board for such purpose; and were held to be invalid.

In *Gentis v. Hunt,* 121 Okla. 71 (247 P. 358), contracts were executed in contravention of constitutional and statutory inhibitions.

*Rivers v. School District No. 51, Noble County,* 68 Okla. 141 (172 P. 778), is a case wherein plaintiff declared on a teacher's contract. Similar suits were instituted at the same time by three other teachers. An injunction suit was instituted to which the plaintiff and the three other teachers were parties; and a permanent injunction was granted restraining said teachers and the district from carrying out the terms of said contracts. The court, which heard this suit for injunction, held that plaintiff's contract and the contract of the three other teachers were void because these contracts provided for a term of eight months or less limited to the funds for the school year of 1913-14. In the reported case the supreme court of Oklahoma approved the holding of the court which issued the injunction.

The statute provided that the voters of the district at their annual meeting might determine the length of time a school should be taught in their district. The voters determined that there should be a term of eight months and no less. At the salaries provided for in the contract, limiting the payments therein to the funds provided for said school year there could not be a term of that duration. The supreme court held that these irregularities invalidated the teachers' contracts and defeated the right of the teachers to recover thereupon.

The statute of Oregon does not give to the voters of the district the right to fix the length of time a school shall be taught.

■ We are also of the opinion that the right given by section 35-1009, Oregon Code 1930, to bring the question of the amount of the budget before the district boundary board and the right of appeal to the circuit court thereupon, do not imply that, pending such proceedings, the board of directors are without authority to contract for the services of teachers.

In these cases it was charged by defendants that
Elizabeth Simmerville and William Roberts acting for
and on behalf of plaintiffs for the purpose of defeat-
ing the appeal of the taxpayers, and knowing that the
budget and tax levy adopted on December 16, 1929,
was excessive and exorbitant, and being satisfied that
upon such appeal said budget and tax levy would be
substantially reduced and particularly in respect to
the excessive teachers' salaries contained therein, and
intending to and for the purpose of defeating and
rendering nugatory said appeal and depriving said
appealing taxpayers of their rights to appeal and to
have said budget and tax levy examined and reduced
by said boundary board, and for the purpose of de-
feating and defrauding all other taxpayers and legal
voters of said district opposed to such excessive and
exorbitant tax levy, and for the purpose of evading and
defeating the laws of the state of Oregon relative to
appeals in such matters, pretended and attempted to
pass at such meeting a certain resolution for the em-
ployment of plaintiff and such other teachers at
salaries, which in the aggregate, equalled the maximum
of the excessive and exorbitant salaries so voted in
said budget and tax levy for teachers' salaries as
aforesaid, and to authorize the issuance of pretended
contracts employing said teachers at such excessive
and exorbitant salaries, which, as above stated,
equalled in the aggregate, the entire amount of such
excessive and exorbitant budget and tax levy. And
that the teachers' contracts here involved were ex-
ecuted pursuant to and as a part of said conspiracy.
By appropriate instructions, the learned trial judge
submitted the question to the jury as to whether such
a conspiracy occurred; and informed the jury that,
if said conspiracy had been proven, no recovery should

be awarded to plaintiffs. Moreover, the jury returned a special verdict wherein they found that the plaintiffs did not engage in said alleged conspiracy.

■ In their brief, defendants assign as error the instruction of the trial court to the jury to the effect that plaintiffs were not obliged to go outside the locality or vicinity in order to seek employment to minimize damages or to accept different employment from that specified in the contracts in suit. Taken in its entirety, the charge on this phase of the case correctly states the law. In effect, the jury were instructed that, if the defendants had shown that by the exercise of reasonable diligence plaintiffs could have procured employment elsewhere similar to that called for by their contracts, the amount of damages, which otherwise would have been recoverable, should be reduced in conformity with the amount plaintiffs could have earned in that way. The court indicated that plaintiffs were not required to go an unreasonable distance to secure other employment.

The authorities upon this point are well collated by Mr. Chief Justice Hart of the Supreme Court of Arkansas in the case of *School District No. 65 v. Wright,* 184 Ark. 504 (42 S. W. (2d) 555). The case of *Court, Sheriff v. O'Connor,* 65 Tex. 334, there cited, does not bear upon the points here considered, and to the authorities there cited we would add *Costigan v. The Mohawk and Hudson Railroad Co.,* 2 Denio (N. Y.) 609 (43 Am. Dec. 758); *Fuchs v. Koerner,* 107 N. Y. 529 (14 N. E. 445); *Williams v. The Chicago Coal Co.,* 60 Ill. 149; *Leatherberry v. Odell, Ragan & Company,* 7 Fed. 641.

As one of the twenty-four assignments of error, defendants urge that, in the face of the allegation in plaintiffs' complaints that plaintiffs were dismissed

May 4, 1930, the trial court erred in instructing the jury that the matter of time of plaintiffs' knowledge of the breach of such contracts was a matter for the jury to determine.

Paragraph V of plaintiffs' complaints is as follows:

"That thereafter, and on or about May 5th, 1930, such other further and different proceedings were attempted to be had by the school board as then comprised and constituted with W. T. Roberts, Mrs. Julia Doubleday and defendant, G. G. Courtright, as members of said board, that a majority of said board so constituted, namely, Mrs. Julia Doubleday, and defendant G. G. Courtright, passed, made and entered a resolution wherein and whereby they attempted to declare said contract which had been entered into between said district and the plaintiff, as set out in exhibit 'A' hereof, invalid and illegal, and further resolved that divers and sundry teachers who had such said contracts, and particularly including the plaintiff, be discharged, and further resolving and providing that said board at the termination of said school year employ various new teachers in place of the teachers who had such contracts as aforesaid, and particularly that of the plaintiff."

Paragraph V of defendants' answer is as follows:

"Admit all of the allegations contained in paragraph V of said complaint except that they deny that either plaintiff or any of the other teachers had any teaching contracts with said district either as alleged in said complaint, or otherwise."

It is alleged in plaintiffs' amended replies:

"That thereafter, and on or about May 20th, 1930, in an attempted compliance with the law in such cases made and provided, and particularly the provisions of section 35-1120, Oregon Code Annotated, 1930, and the regulations and procedure authorized and adopted by the Oregon State Board of Education, a majority of said board as then constituted filed certain charges against said teachers as alleged causes for the dismissal of the plaintiff, and thereafter based upon such

said charges as so filed by said board and in an attempted compliance with said section 35-1120, Oregon Code Annotated, 1930, and the regulations and procedure adopted by the State Board of Education of the State of Oregon in conformity therewith, a hearing was held by said school board, at which said hearing said teachers against whom said charges were filed were represented by counsel, and a majority of said board of said School District No. 91 as then constituted, wrongfully and illegally, unjustifiedly and unlawfully made, rendered and entered a resolution and order sustaining said charges as so filed by it, and wrongfully, unlawfully, unjustifiedly and illegally ordered the dismissal and discharge of said teachers, and particularly this said plaintiff.''

As stated, the record discloses that plaintiffs appealed from the order of discharge and dismissal to the county school superintendent and, after a hearing on said appeal, said county school superintendent, on or about August 15, 1930, refused to approve or affirm the order of the school board.

Whatever would have been the effect of the action of the board taken at its meeting on May 5, 1930, declaring the contracts in suit invalid and illegal, if no other or further action had been attempted by the board in referring to the rights of plaintiffs under said contracts, we are constrained to hold that the action of the board at its meeting on May 19, 1930, in entertaining charges brought by the members of the board against plaintiff was a recognition of plaintiffs' contractual rights under the contracts executed pursuant to the resolution adopted by the board at its meeting on December 28, 1929. It will be borne in mind that these charges are dated subsequent to the close of the school year of 1929 and 1930, which, according to the testimony, closed on May 16th or 17th, 1930. On May 19, 1930, the board appointed the third day of June, 1930,

as the time for hearing said charges which was subsequent to the expiration of the term of teaching under any contract or contracts with plaintiffs other than the contracts in suit. No other conclusion can be supported than that the board understood that the contracts in suit were still effective, and that, by reason thereof, the board had jurisdiction to entertain charges against plaintiffs as teachers employed by said board to teach in said district. "The right to a hearing must in any event be based on a valid contract of employment": *West v. Hedges,* 88 Or. 158, 163 (171 P. 766). Again, when the testimony was heard in June, 1930, among other witnesses, members of the board testified, and the board took official action thereupon. Certainly, the board cannot now be heard to say that it did not recognize as binding and effective the very contracts which gave it jurisdiction to prefer charges against plaintiffs, adduce evidence in support thereof and formally and officially declare that such charges had been sustained. The able, experienced and learned trial judge committed no error prejudicial to defendants when he submitted to the jury the question as to the time when plaintiffs became aware that the board had breached the contracts in suit.

In *Foreman v. School District No. 25,* 81 Or. 587, 592 (159 P. 1155), the court, speaking through Mr. Justice HARRIS, distinguished between "(1) Acts which breach the contract of teaching; and (2) acts which render a person objectionable or undesirable as a teacher, although the contract of teaching is not breached." The charges against plaintiffs affecting the issues in the instant case were that plaintiffs had been guilty of conduct rendering them undesirable as teachers. The board was bound by the decision of the county school superintendent thereupon: *Jackson v. Steamboat Rock Ind. Sch. Dist.,* 110 Iowa 313 (81 N. W.

596); *Town of Pearsall v. Woolls,* 50 S. W. 959; *Powell v. Mathews,* 280 S. W. 903; *The People ex rel. Yale v. Eckler,* 19 Hun. (N. Y.) 609. No error was committed by the trial court in so instructing the jury.

That the board was apprised of the effect of its action and of the consequences attendant upon the decision of the county school superintendent is manifest from its action on August 29, 1930. Then, after an executive session held for the purpose of discussing with the plaintiffs the matter of their employment, the board adjourned to the assembly room of the high school, where, in the presence of the general public, teachers other than plaintiffs were again chosen.

As disclosed by the record, this action of the board constituted the first notice to plaintiffs subsequent to May 19, 1930, upon which plaintiffs would have been justified in assuming that a breach had been committed by the board of the contracts in suit of such a nature as to relieve plaintiffs from the necessity of holding themselves in readiness to perform their part of the contracts. Pending the charges against them and until the final disposition thereof, plaintiffs would not have been warranted in assuming that the contracts in suit had been breached and violated by the board.

As affecting plaintiffs' right of recovery, or the amount thereof, it is immaterial whether defendants' breach of the contracts occurred on August 29, 1930, or upon the first day of the term next ensuing, which was the following Monday, for the reason that there is nothing in the record disclosing any opportunity subsequent to August 29, 1930, for plaintiffs to have obtained similar employment.

We find no reversible error herein; and, therefore, the judgments of the lower court are affirmed.

BELT, J., not sitting.